Frederick Lewis and others, Executors, etc., Appellants, *v.* Joseph R. Ingersoll and others, Respondents.

This court will not review a case upon the exceptions to findings of fact, or the omission to find other facts not found.

The promise of an agent of mortgagees, that he will assume and allow a payment made by a tenant, to a clerk or servant of the agent, upon the bond and mortgage, as a good and valid payment to his principals, when he has no authority from his principals to make any such promise on their behalf, and he never did allow it, or account to the mortgagee for the money, is but the individual promise of the agent, and in no respect the promise of the mortgagees, nor binding upon them.

Nor will such promise estop the mortgagees from insisting that the payment was never made.

A payment of money intended to be applied upon a bond and mortgage, to a clerk or servant of the mortgagees' agent, the receiver not being an agent, clerk or servant of the mortgagees, and never having acted as such, is not in legal effect a payment to the agent and so a payment to the mortgagees.

When an agent undertakes to act, or do his business, by or through another, the acts of such other are not the acts of the principal, unless the agent had authority to employ or appoint others.

Acts merely mechanical, an agent may employ others to perform, having first determined that such acts are necessary or proper to be performed. But not so with acts involving the exercise of a discretion, or anything of the character of a trust, which is in its nature personal to an agent.

In such cases the agent has no right to turn the principal over to another, of whom he knows nothing. The maxim is, *delegatus non potest delegare.*

The authority to an agent, from a principal, to receive money, is most clearly a personal trust and confidence, which cannot be delegated without certain and plain authority.

Where a mortgage upon lands situated in this State, is executed here — it not appearing where it is made payable — and there is nothing to indicate that a rate of interest different from that allowed by the laws of New York was intended by the parties, the law of the place where the contract was made governs, as to the rate of interest.

Where letters were produced and identified by a witness, and although he had forgotten the facts therein stated, he was able to say, in substance, that the contents of the letters were undoubtedly true at the time they were written, although he was then unable to remember them; *Held,* that they were admissible as auxiliary to the testimony of the witness, and as memoranda made by him of a then existing state of facts.

The action was brought to compel the defendants to discharge and surrender a certain bond and mortgage in their

hands, and to have the mortgage canceled of record on the ground that the debt had been paid and satisfied. The lands in question are situated in the county of Broome, in what is known as the Bingham patent. The bond and mortgage in question were executed on or about the 19th of June, 1826, to secure the payment of $4,664.66 by installments. The plaintiffs' testator, Hazard Lewis, was the owner of the premises in fee, and commenced the action in his lifetime; alleging, in his complaint, that the mortgage debt had been fully paid and satisfied, but that the defendants claimed a large amount to be due thereon, and threatened to foreclose if the same was not paid ; that the mortgage remained a cloud upon the plaintiffs' title and prevented a sale and conveyance of the premises ; and praying for the relief above mentioned. He admits that if anything is due he is personally liable, and consents that a decree may be entered against him in the action, if anything shall be found due on said bond and mortgage, for the amount so due.

The defendants, in their answer, admit that the whole amount has been paid except the sum of $511.96, with interest thereon from and after December 11, 1843; which they claimed to be still due and unpaid. The action was tried at the Broome Special Term, in April, 1860, before BALCOM, Justice, without a jury. The said justice found, as conclusions of fact from the evidence, that in the year 1843 sufficient payments were made to satisfy the whole amount due on said bond and mortgage, except the interest which was due thereon on the first day of June, 1830. That on the last mentioned day, there was due for interest thereon $326.53, which was never paid, or received by the trustees of the Bingham estate, who held said bond and mortgage. He further found that on the 29th of November, 1830, the mortgaged premises were owned by Virgil Whitney and David C. Case, as tenants in common, and that on that day the latter paid to the former $326, as and for the interest which became due on the first of June preceding. That Joshua Whitney, of Binghamton, was the general agent of

the trustees of William Bingham, from and prior to 1824, until the time of his death, in 1845; and that during all this time, and subsequent thereto, the said trustees resided in the city of Philadelphia. That from about the year 1829 until the year 1835, the said Virgil Whitney acted from time to time as a clerk or servant of Joshua Whitney at Bingham-ton, in correspondence, drawing contracts, deeds, bonds and mortgages, and in receiving money for said trustees; but said Virgil Whitney was never an agent, clerk, or servant of said trustees, and never acted as their agent, clerk, or servant. That Virgil Whitney, from the year 1825 up to 1836, had been in the habit of receiving money from time to time of persons who owed said trustees on contracts and on bonds and mortgages, and that he generally carried such money for such persons to Philadelphia, and there paid the same for them to said trustees. That said Virgil Whitney never paid the said sum of $326 received by him of Case on the 29th of November, 1830, to the said trustees, or to Joshua Whitney, or accounted therefor to any other person. That Virgil Whitney was never authorized by said trustees to receive money for them, and that the money he did receive for them at any time was taken by him either as a clerk or servant of said Joshua Whitney, or for the accommodation of the persons from whom he received the same. That the bond and mort-gage in question were never in the possession of Joshua Whitney, and that he never received any payment thereon from any one; but that all the payments made thereon were made to the trustees personally at Philadelphia, other than this sum of $326 paid by Case to V. Whitney. That in the year 1835 or 1836, and prior to the 8th day of February, in the latter year, Joshua Whitney, in a conversation with the plaintiffs' testator in reference to a purchase by the latter of the interest of Virgil Whitney in said mortgaged premises, promised the said testator that he would assume and allow the said sum of $326 paid by Case to V. Whitney, as a good and valid payment to said trustees on said bond and mortgage, and that thereafter, and on the said 8th of February, 1836, ·

said testator purchased of V. Whitney, his interest in said premises and paid him a valuable consideration therefor and took a conveyance. That said Joshua Whitney had no authority from said trustees to make said promise, and never allowed the said sum as a payment, and never accounted to the said trustees for the same. That Virgil Whitney was never held out by Joshua Whitney as an agent of said trustees; and that Joshua had no authority, express or implied, to authorize Virgil to receive money for them so as to charge them therefor while the same was in the hands of Virgil. That prior to the year 1835 Joshua Whitney did not know of the payment of this sum of $326 by Case to Virgil. That by reason of the non-payment of the interest that became due on the first of June, 1830, there was then remaining due and unpaid on said bond and mortgage the sum of $1,040.39. As conclusions of law from the said facts the said justice held and determined that the said bond and mortgage were not paid and satisfied, but that said mortgage was still a valid and subsisting lien on the premises for the amount so found due; and in pursuance of the consent in the plaintiffs' complaint, ordered judgment against him for said sum of $1,040.39 with costs of the action, and that upon payment thereof the said bond and mortgage should be canceled.

In the course of the trial, the plaintiff called as a witness, Christopher Eldredge, one of the persons who executed the bond and mortgage in question, and upon his cross-examination by the defendants' counsel, a letter purporting to have been written by witness to trustees, dated Sept. 30th, 1834, was submitted and identified. Witness says, "I wrote the letter; I don't remember seeing the statement of Aug. 20, 1834; I have no doubt but that I did what I said in the letter I did; I presume I did so; I have no recollection of it aside from the letter." Plaintiff's counsel objected to the letter of witness to Miller as a memorandum or otherwise, witness saying he has no memory of it whatever, but what the letter says. Received under objection and exception taken, and letter read under objection.

"Binghamton, *Sept. 30th*, 1834.

" William Miller, Esq. :

"*Dear Sir* — Yours of the 20th ult., with my bond and mortgage, and power of attorney, etc., was duly received, and I will now attempt to make an apology for my seeming negligence in answering it. At the time I received the package, Col. Lewis and Mr. V. Whitney were both absent, and I expected them soon, they however did not arrive here till last week ; I immediately called on them and showed them the statement of interest, and told them that payment must be made without delay,— and that the trustees knew nobody else to look to for payment but myself and Mr. Collier ; and therefore, Mr. Collier and myself were placed in an unpleasant situation, and that it was entirely owing to your unlooked for indulgence, that we had not been prosecuted. These gentlemen have given me the strongest assurances that they will immediately make provision for the payment of at least the interest. I will do myself the honor of making a further communication to you soon, if Messrs. Lewis and Whitney do not make immediate payment of at least the interest.

"Your obedient servant,

"CHRISTOPHER ELDREDGE."

" I don't remember receiving a letter from Miller to which I wrote the answer." A letter of Miller to Eldredge and Collier offered by the defendants' counsel and objected to by the plaintiffs' counsel, but admitted and read under objection and exceptions.

"Philadelphia, *August* 20, 1834.

" Christopher Eldredge & John A. Collier, Esqs. :

"*Gentlemen* — I have the pleasure of annexing a statement of your bond account, as it appears on the books of the trustees of the estate of the late W. Bingham, Esq.—balance of principal and interest on 1st June last, $6,297 31-100, for which we will thank you to provide payment. You will perceive that we are heavy sufferers by the delay which has taken place in the interest. If that is cleared off forthwith, we are content to wait a convenient time for the principal,

it being understood that the payment of interest shall be punctually attended to.

"Your obedient servant,

(Signed)          "WM. MILLER,

for the trustees, estate of W. B."

CHRISTOPHER ELDREDGE and JOHN A. COLLIER, Esq'rs,
DR.

For the am't of their bond payable in 5 years from
1st June, 1826, with interest payable annually, $4,664 66
The following payments being on account of
interest:

| | | | |
|---|---|---|---|
| One year to 1st June, 1827,............ | $326 | 53 | |
| "          "          1828,............ | 326 | 53 | |
| "          "          1829,............ | 326 | 53 | |

For interest in arrears, to wit:

| | | | |
|---|---|---|---|
| Due 1st June, 1830,.................... | 326 | 53 | |
| "      "  1831,.................... | 326 | 53 | |
| "      "  1832,.................... | 326 | 53 | |
| "·      "  1833,.................... | 326 | 53 | |
| "      "  1834,.................... | 326 | 53 | |
| | | | 1,632 65 |

Bal. principal and interest due 1st June, 1834,....$6,297 31

Six thousand two hundred and ninety-seven dollars and thirty-one cents.

[Letter from witness to Wm. Miller, trustee, received under objection and exception.]

"BINGHAMTON, *February* 7, 1838.

"WILLIAM MILLER, Esq., trustee of the estate of the late Wm. Bingham, deceased:

"*Dear Sir* — On the 4th of August last I inclosed in a letter to you, the now inclosed draft and certificate of deposit, amounting together to $750, as payment on account of interest due on a bond against myself and John A. Collier, Esq., to the trustees, which bond Col. Hazard Lewis became obligated to pay. Col. Lewis regrets that it is not in his power at this time to forward to you at least the whole amount of

the interest due on the bond, and desires me to say to you that he is not unmindful of the importance of immediately paying at least all the interest, and that the balance shall be paid in May or 1st June next and as much of the principal as possible. I have no doubt he will perform what he states. The letter of the 4th of August last, found its way to the general post-office at Washington, where it lay till the 26th of January, and was then sent to the postmaster of this village. I will thank you to indorse the amount upon the bond and advise me or Col. Lewis of the receipt of it.

      " Truly, your obedient servt,

                  " CHRIS'R ELDREDGE."

Jas. Hunt, Cash. Manu. and Mech. Bk., 6th July, 1837—400 dls—order of Hazard Lewis, Esq.,— C. Murdock, Cash. Binghamton, Broome Co. Bk., 4th Aug., '37, or Cash. Mech. and Farmers' Bk., Albany, to order ch. C. Eldredge, Esq.—350.

The above letter received under objection and exception.

I wrote it but don't remember anything about it.

Question by defendants' counsel: Would you have written the letter if it had not been true?

The plaintiffs' counsel objected to the question.

Overruled, and the plaintiffs' counsel excepted.

Ans. I presume that what I wrote was true, as I understood it.

Ques. Have you any doubts it being true?

The plaintiffs objected.

Overruled; plaintiffs except.

Ans. I cannot say that I have.

Letter offered in evidence by defendants. The plaintiffs' counsel objected in due time to the letter dated February 7, 1838, but it was admitted and read under objection. The plaintiffs' counsel further objected that the letter states an alleged conversation with Lewis — what it is pretended Lewis told him — but the entire letter was admitted under objection. Witness says: I have looked once for letters from the trustees of the Bingham estate, and found

45

none; there was a difficulty about a bridge here when there was an unfriendly feeling between Gen. Whitney and me.

The plaintiffs' counsel filed and served exceptions to nearly every conclusion of fact, separately, and also for the omission to find various other facts which it was claimed ought to have been found from the evidence, and also to the several conclusions of law, separately, and especially to the allowance of seven per cent interest on the bond and mortgage instead of six per cent allowed by the laws of Pennsylvania. The plaintiffs appealed from the judgment, to the General Term of the Supreme Court, where the same was affirmed, and from that judgment appealed to this court.

*D. S. Dickinson*, for the plaintiffs.

*Hotchkiss & Seymour*, for the defendants.

JOHNSON, J. Upon the facts established by the findings of the court, it is impossible for the plaintiff to maintain this action. It is unnecessary to repeat here that this court will not review the case upon the exceptions to findings of fact, or the omission to find other facts not found. This has been so often and so uniformly asserted as the rule, that the occasion for re-asserting it ought no longer to be permitted and passed upon by us.

The $326 claimed to have been paid upon the bond and mortgage, were never received either by the defendants personally, or by their agent, Joshua Whitney. The bond and mortgage were never in the possession of the agent, but were always in the hands of the defendants, who received personally, or at their office in Philadelphia, all the moneys ever paid thereon.

There is no dispute as to the fact that the amount in question was paid by Case, then a part owner of the premises, to his co-tenant Virgil Whitney, for the purpose of having it applied upon the bond and mortgage, nor that it was received by Virgil Whitney to be so applied. But the application never having been in fact made, nor the money handed over, by Virgil, either to Joshua Whitney the agent, or to the

defendants, the question is whether the law will make the application. It is quite clear that this money, while it remained in the hands of Virgil Whitney could be no pay-ment, unless he was authorized by the defendants to receive the same for them on that account, or they have in some way agreed to apply it since it was so received. The fact is dis-tinctly found that Virgil was never authorized by the defendants to receive any money for them as their agent; and Joshua Whitney has only agreed that the amount so paid should be applied. It is quite certain, therefore, that the mere payment of the money to Virgil Whitney was in law no payment or satisfaction of the debt for that amount.

In respect to the promise of Joshua Whitney that this amount thus in the hands of Virgil he would assume and allow as a good and valid payment to the defendants, the fact is established that he did make such promise, but the further fact is also found that he had no authority from the defend-ants to make any such promise on their behalf, and that he never did allow it, or account to the defendants for the money, or any part thereof. The promise was but the indi-vidual promise of Joshua Whitney, and in no respect the promise of the defendants, nor binding upon them.

The position assumed and urged with so much earnestness and apparent confidence by the plaintiffs' counsel, that the payment of this $326 to Virgil Whitney was, upon the facts found, in legal effect a payment to Joshua Whitney, the agent, and so a payment to the defendants cannot be main-tained. The finding in this respect is, that Virgil, for the period of about nine years, acted from time to time as a clerk or servant of Joshua, his father, who was the agent, in cor-respondence, drawing contracts, deeds, bonds and mortgages, and receiving money for the defendants, but was never an agent, clerk, or servant of the defendants, and never acted as such. As to the defendants, therefore, Virgil Whitney was a mere stranger, and they were no more bound by pay-ments to him than by payments to any other person. He acted from time to time, not uniformily or constantly, as the clerk or servant of the agent. He was the clerk, or servant,

or agent of the agent, but not of the principals. The principal is bound by the authorized acts of his agent. Such acts are his acts, and it is upon that principle alone that he is bound. But when the agent undertakes to act or do his business by or through another, the acts of such other are not the acts of the principal, unless the agent had authority to employ or appoint others. Acts merely mechanical an agent may employ others to perform, having first determined that such acts are necessary or proper to be performed. But not so with acts involving the exercise of a discretion, or anything of the character of a trust which is in its nature personal to an agent. In such cases the agent has no right to turn the principal over to another of whom he knows nothing. (2 Kent's Com., 633; *Com. Bank of Lake Erie* v. *Norton*, 1 Hill, 501.) The maxim is, *delegatus non potest delegare.* The authority to an agent from a principal to receive money is most clearly a personal trust and confidence which cannot be delegated without certain and plain authority. It does not help the plaintiffs' case that Virgil Whitney sometimes took money from the settlers or purchasers as their agent, to carry and pay to the defendants at Philadelphia. It is clear, therefore, that this money paid to Virgil, which never came to the defendants' hands nor to the hands of their authorized agent, was not in law a payment upon the bond and mortgage. The promise of Joshua Whitney that he would assume the payment to Virgil and allow it, does not estop the defendants from insisting that the payment was never made. Granting even that the plaintiffs' testator purchased in consequence of that promise, which does not appear, it would not so operate. He could not estop his principals from insisting upon what was true by any act or promise outside of his authority.

Interest at the rate of seven per cent was properly allowed. The lands were situated in Broome county in this State, and the securities were there executed. There is nothing to indicate that a rate of interest different from that allowed by the laws of this State was intended by the parties. In such a case the law of the place where the contract is made gov-

erns as to the rate of interest. (3 Kent's Com., 460; 3d ed.; Story's Conflict of Laws, §296.)  There is no question of any usurious intent in the case to affect the application of this general rule.  It does not appear from the case where these securities were made payable.  It is plain, however, that they were New York and not Pennsylvania contracts.

The only remaining question on the case is whether the letters of Eldredge to Miller of the 30th September, 1834, and of the 7th February, 1838, and the letter and statement of the amount due upon the bond and mortgage, of August 20th, 1834, to Eldredge and Collier, were admissible in evidence, against the plaintiffs' objections.  Collier and Eldredge were the obligors and mortgagors, and were seized in fee of the premises.  The plaintiff Lewis derived title immediately from them, and of course claimed under or through them, subject to this mortgage debt.  The land in his hands was bound for whatever amount remained due and unpaid on the bond and mortgage.  The question at issue, to be tried, was, whether the debt had been paid.  The plaintiff affirmed that it had been; and the burden of proving the fact, rested upon him.  These letters and statements were a part of the defendants' evidence to show that the payment claimed by the plaintiff to have been made had never been made.  There was no question between the parties as to any thing, except this item of $326.  Had these letters been offered as the mere declarations or statements of Eldredge, independently of his oral evidence, and as a substitute for it, they would, I am inclined to think, have been inadmissible as evidence, as being the declaration of a former owner of the land and the principal debtor, against a subsequent purchaser for value subject to the indebtedness.  But they were not so offered or received.  They were produced and identified by the witness Eldredge on his cross-examination.  He had forgotten the facts therein stated, but was able to say in substance that the contents of the letters were undoubtedly true at the time they were written, although he was then unable to remember them.  Under these circumstances it seems to me these papers were admissible as auxiliary to the testimony of Eldredge, and

as memorandums made by him, of a then existing state of facts, within the cases of *Halsey* v. *Sinsebaugh* (15 N. Y., 485); *Russel* v. *Hudson River R. R. Co.* (17 id., 136); *Gray* v. *Mead* (22 id., 462). But in any event it is difficult to see how the admission of these papers could have worked any possible injury to the plaintiff. There was no dispute that the amount claimed as a payment was paid to Virgil Whitney, and unless it was paid over by him to the defendants or their agents, it could not operate as a payment. Aside from that amount in the hands of Virgil Whitney there was no pretense that the debt had been paid. The plaintiff was able to show this money paid to Virgil, but nothing further. He did not, therefore, make out any case, even *prima facie*, and the defendants were clearly entitled to judgment, irrespective wholly of the evidence furnished by these letters. They do not affect the question of the authority of Virgil Whitney to receive the money for the defendants in any way, and clearly were not introduced or used for that purpose. I am of the opinion, therefore, that the judgment is right and should be affirmed.

Judgment affirmed.