CHARLES J. KERSHAW & another *vs.* LUTHER A. WRIGHT & another.

Suffolk. March 6. — June 27, 1874. WELLS & ENDICOTT, JJ., absent.

On the issue whether a usage exists in a city to inspect a certain kind of provisions. evidence that the rules of a chamber of commerce, having the power given to it by its act of incorporation to appoint an inspector of provisions, and one of the purposes of which was declared to be "to establish and maintain uniformity in the commercial usages of the city," said nothing about the kind of provisions in question, while they provided for the inspection of many other kinds, is admissible to show the non-existence of the alleged usage.

An objection to the admission of part of a deposition, that the form of an interrogatory does not give notice of the substance of the answer thereto, so as to permit cross-examination thereon, cannot be taken on argument in this court when the entire deposition is not before the court.

On the issue whether an alleged commercial usage exists, a witness may be asked to describe how, under the usages in force, a transaction like the one in question would be conducted by all the parties thereto, from its inception to its conclusion.

On the issue whether a broker buying a certain kind of provisions was in fault in not having the provisions inspected, the answer of a witness, asked to describe the usages in such a case, that "the responsibility of putting up the provisions right, rests with the packer," is not an opinion on a matter of law, but is a mode of stating, as a matter of fact, that the broker in such a case depends upon the packer, and the answer is admissible.

A witness who is engaged in the business of packing and forwarding hams, may properly be asked as an expert if in his opinion there was danger that a certain lot of hams, shipped in a specified condition would not arrive at their destination in as good condition as when shipped; and may answer that they could not, in consequence of the condition of the weather when they were shipped.

An exception to a question to a witness will not be considered, which does not show how the question was answered, nor that the answer was in some way unfavorable to the party excepting.

CONTRACT to recover money alleged to have been paid to the firm of Plankington & Armour in the purchase of hams in the

defendants' behalf, and for commissions and charges in making such purchase.

At the trial in the Superior Court, before *Putnam*, J., the jury returned a verdict for the plaintiffs, and the defendants alleged exceptions in substance as follows :

The defendants telegraphed to the plaintiffs, who were brokers in Milwaukee, Wisconsin, to buy of Plankington & Armour two hundred barrels of green hams, rubbed in salt, at a limited price, and ship them to Boston. The plaintiffs bought, shipped and paid for the hams, and drew on the defendants for the amount expended by them in executing the defendants' order, with their commissions. The hams arrived in Boston in bad order, and the defendants refused to receive or pay for them.

The defendants introduced evidence tending to prove that the hams were unsound when packed, and were not rubbed in salt as required, and that it was the duty of the plaintiffs, as their agents, to attend to the matter themselves, in examining the goods, or to have some other persons inspect them before receiving or accepting the same, and contended that they did not do their duty, and that if they had done so the defect and improper condition would have been apparent and been discovered, and that they were in fault in this respect, and paid the money wrongfully and without authority; as they did not do their duty in making or having an examination made before accepting the goods.

The defendants offered, and the court admitted evidence, tending to show a usage or custom in Milwaukee, for brokers or commission merchants, in a case like the present, either to examine the goods themselves, or have them examined and inspected by an inspector at the purchasers' expense, before accepting or paying for them, and that the plaintiffs did not do it or have it done in this case, and failed of their duty in that regard. In rebuttal, the plaintiffs denied the existence of such a usage or custom, and controverted by other evidence the proof of the defendants. One of the plaintiffs testified that it was the custom and usage to have cured hams inspected, but not green hams ; that the shipping of green hams in barrels was of recent date. The plaintiffs further contended, and offered evidence tending to show that the hams were in good condition and were rubbed in salt and were properly packed, and that they spoiled in the course of transportation

because of the unusually warm weather, and not because of their improper condition or defective packing when shipped, and also offered evidence that these hams were, in fact, inspected. Among other evidence, the plaintiffs offered, and the court admitted in proof, against the defendants' objection, the act of the State of Wisconsin incorporating the Chamber of Commerce in the city of Milwaukee, and a printed pamphlet, sworn to and identified in the deposition of one of the plaintiffs as the rules and regulations adopted by the said Chamber of Commerce.* It was offered and admitted upon the question of usage and custom alleged by the defendants as aforesaid.

The plaintiffs, on cross-examination of the defendants' witnesses, inquired of them as to the reputation and standing of the firm of Plankington & Armour, to which the defendants objected.

The plaintiffs, in rebuttal, offered and were allowed to introduce in evidence, against the defendants' objection, the following questions and answers in the deposition of Mr. Plankington:

"*Int.* 8. State what, under such custom or usage, are the duties of the vendor or packer of hams in relation to the furnishing packing, inspection, and shipping or forwarding thereof.

"*Ans.* It is not the custom, so far as I know, for the broker to send an inspector for green hams; for instance, the broker buys a quantity of hams, cured in pickle; he usually sends an inspector — the inspector that is appointed by the Chamber of Commerce — to examine a sufficient amount to make a full report of the lot; that is, in making this inspection, they open a certain number of barrels out of every hundred — about five out of every hundred — hap-hazard. The broker would have the right to send the inspector to see that the hams sold dry, with or without salt, are sweet, in good condition, and properly cut at the time of delivery.

---

* The act of incorporation was declared to be a public act, and by section 11, power was given to the corporation " to elect or appoint one or more persons, as it may see fit, to examine, measure, weigh, gauge or inspect flour, grain, provisions, liquor, lumber or any other article of produce or traffic commonly dealt in by the members of said corporation." The preamble of the general rules adopted by the corporation declared its objects to be " to promote just and equitable principles in trade, to correct abuses, to establish and maintain uniformity in the commercial usages of the city." The rules provided for the inspection of many kinds of provisions, but said nothing about green hams.

It is not customary to have this kind of provisions inspected. The broker depends upon the responsibility of the house packing. The reason is, that hams sold green are not sold for consumption, but sold to parties who cure them for consumption. It is customary to have an inspector in all sales of cured meats.

" *Int.* 9. State how, under the usage or custom aforesaid, a transaction for the purchase of hams is conducted by the broker and the packer, from the inception to the conclusion of the transaction, and the time when the duties of each are fully performed.

" *Ans.* The broker comes to the packer to purchase a quantity of hams, and he states how he wants them put up, and when he wants them delivered, and where. Then the packer fills out the instructions that are given to him by the broker, and delivers them according to the instructions. The responsibility of putting the meat up right rests with the packer. It is not the custom here, except with reference to cured meats, that an inspector should be employed. They sometimes may have an inspector to look after green meats, but it is not the custom. With green meats, the broker takes the meats upon the responsibility of the packer.

" *Int.* 27. State whether or not, in your opinion, at the time you executed the order for the hams referred to in your answer to the fourteenth interrogatory, there was danger or hazard in shipping said hams, packed green and rubbed in salt, that they would not arrive in good condition, and what the chances of their arriving in Boston in a like good order and condition as when shipped, if not subjected to extraordinary delays or detention on the voyage.

" *Ans.* To my knowledge, the weather was bad at that time, warm, muggy weather; and there was danger in shipping hams in that condition. They could not at that season of the year, with the weather as it was then, have arrived in Boston in as good order as when shipped from here, even though not subjected to extraordinary delays or detention on the voyage."

*A. A. Ranney*, for the defendants.

*C. R. Train*, for the plaintiffs.

DEVENS, J. The present action, which was for the price o. provisions bought upon the order of the defendants, by the plaintiffs, as brokers or commission merchants, was defended (the pro-

visions having arrived in a damaged condition and the defendants having declined to receive them) upon the ground that they were not properly prepared for shipment, and that the plaintiffs had neglected their duty in the course of their employment, especially in this, that they had not themselves examined the goods, or caused them to be examined by an inspector at their expense, and evidence was offered tending to show a usage in Milwaukee, where the purchase was made, for brokers or commission merchants so to do before acceptance of the goods or payment therefor.

Upon the question what the mercantile usage was in reference to this at Milwaukee, the act of the State of Wisconsin incorporating the Chamber of Commerce there, and the regulations of the Chamber framed under the act, were competent. One of the objects of this Chamber was " to establish and maintain uniformity in the commercial usages of the city ; " and while undoubtedly usages might exist not recognized by this Chamber, the fact that this body of merchants had passed general regulations upon the subject of the inspection of provisions, describing many kinds and qualities, which did not prescribe any inspection of such provisions as those the price of which was the subject of controversy in this case, (which was the use the plaintiffs apparently sought to make of it,) had some tendency to show that the usage claimed by the defendants was not in existence there ; and although these rules were adopted three years before the transaction in question, there was no evidence that they were not in full force at the time.

The defendants also object to that portion of the 8th answer in Plankington's deposition, which concerns the usage as to the duty of the broker, as not responsive to the interrogatory, which was as to the duty of the vendor or packer in such sales, upon the ground that, no notice being given by this interrogatory that the inquiry related to any such subject, they had no opportunity to cross-examine upon it. The answer, however, in this matter seems to have related directly to that which was the subject of controversy between the parties, and it was competent for the presiding judge in his discretion to admit it. It may be that a full examination of the whole deposition, which is not before us, showed that the attention of the defendants was fully called to the subject matter of it by other interrogatories, and certainly

the usage as to what was to be done by the broker was closely connected with the usage as to the duties of the vendor or packer.

Nor do we think the 9th interrogatory to the same witness, or the answer thereto, objectionable. It is an inquiry substantially how, under the usage of Milwaukee, a transaction for a purchase such as this was is there conducted, from its inception to its conclusion, by the broker and packer, and what acts constitute a full performance by each of his duty under that usage. It calls directly for a statement of all the acts which each one does in such a transaction, and not for any opinion upon the usage. The statement of the answer to which the defendants especially object, "the responsibility of putting up the meat right rests with the packer," is not, as contended for by the defendants, an opinion on matter of law, but a mode of stating, as a matter of fact, that, whether he may properly do so or not, the broker in this respect depends upon the packer.

In answer to the claim of the defendants that the provisions were not properly prepared for shipment, it was competent for the plaintiffs to show that they were so, and that the damage was occasioned by another cause, the weather, of which the defendants took the risk when they ordered them to be sent by the plaintiffs. The witness was a person engaged in the trade in the course of which these goods were bought, and must be considered as having that general knowledge upon the subject which results from experience in it. It was therefore competent to inquire of him what would be likely to be the effect of the weather upon provisions packed as these were directed to be. There is a large class of facts in regard to which judgment or opinion is all that can be expressed; *Commonwealth* v. *Dorsey*, 103 Mass. 412, and cases cited; and the judgment of a man whose business was that of a dealer in the articles as to which inquiry was made, was proper to be considered by the jury.

Whether, on cross-examination of the defendants' witnesses, the plaintiffs should have been permitted to inquire as to the reputation and standing of Plankington & Armour, of whom the plaintiffs bought, need not be considered, as the exceptions do not show what replies were made to such inquiries, or that they could have been in any way unfavorable to the defendants. *Fuller* v

*Ruby*, 10 Gray, 285. *Hackett* v. *King*, 8 Allen, 144. *Burke* v. *Savage*, 13 Allen, 408. *Hobart* v. *Plymouth*, 100 Mass. 159.

*Exceptions overruled.*