WILLIAM B. McCREERY AND ALEXANDER McFARLAN v. GEORGE S. GREEN.

*Contract—Prevention of Performance—Damages.*

Inability to perform a contract does not release a party to it from his obligation if he was disabled by his own default.

Where one contracts to advance capital, his default in doing so is not excused by the occurrence of a financial panic.

Where one of the parties to a contract is bound to furnish money needed to carry it out, his default in so doing amounts to a prevention of performance.

Where one contracting party can show that the other prevented his performance of the contract, it is to be taken as *prima facie* true that he would have accomplished it if he had not been stopped.

Where parties make a contract whereby one is to enter land in the name of the others and they are to advance money to pay his expenses, on repayment of which they are to deed him a proportion of the land, it is held to be a joint adventure, and the parties do not stand in the relation of principal and agent, master and servant, or vendor and purchaser.

A contract was made by which A was to locate and enter pine lands in the name of B and C to an amount not exceeding 10,000 acres,

they to pay his expenses and to convey to him an undivided fifth of all the land located. Before 10,000 acres had been entered the panic of 1873 took place and they became unable to furnish money. *Held* that a proper measure of the damages sustained by A was the value of one-fifth of so much of the 10,000 acres as had not been located, at the governmental selling price of $2.50 an acre, less the fair expense of locating, with interest from the time when all farther steps to obtain land ceased.

A contract provision that one of several joint owners of land should have a commission on sales which he effected, means sales of which he was the procuring cause, since he could not complete a sale without the concurrence of the others.

The allowance of damages under the name of interest is not material error.

Interest is allowable as damages for the non-payment of commissions when they are earned.

The question, "What did he say to that?" being asked on cross-examination, it was held that the answer, "I could not say what he replied to it; it appeared to be all satisfactory and he assented to it," was irresponsive and should have been struck out for introducing an inference of the witness.

Evidence of what was said by a third person in reply to one of the parties to the case in transacting the business involved in it, is not hearsay.

Error to Bay.  Submitted October 19, 1877.  Decided January 22, 1878.

Assumpsit.   Defendants bring error.

*Holmes, Collins & Stoddard* for plaintiffs in error. A witness must rely on his memory and not read from a written statement made long after the event, *Russell v. H. R. R. R.*, 17 N. Y., 134; *Meacham v. Pell*, 51 Barb., 65; *Wilde v. Hexter*, 50 Barb., 449; *C. & W. Coal Co. v. Liddell*, 69 Ill., 639; *Lawrence v. Barker*, 5 Wend., 301; *Feeter v. Heath*, 11 Wend., 479. Speculative profits cannot be a measure of damages, *Lattin v. Davis*, Lalor's Supp., 9; *Blanchard v. Ely*, 21 Wend., 342; *Wilson v. Martin*, 1 Den., 602; *Spencer v. Halstead*, id., 606; *Giles v. O'Toole*, 4 Barb., 261; *Lawrence v. Wardwell*, 6 Barb., 423; *Hamilton v. McPherson*, 28 N. Y., 72; *Olmstead v. Burke*, 25 Ill., 86; *Horner v. Wood*, 16 Barb., 386; *Hiner*

*v. Richter*, 51 Ill., 299; *Washburn v. Hubbard*, 6 Lans., 11; *Rogers v. Beard*, 36 Barb., 31; *Brown v. Foster*, 51 Penn. St., 165; Field on Damages, pp. 334-8. Nominal damages only are recoverable for a failure to convey lands under a contract where there is no bad faith, *Sawyer v. Warren*, 36 Ia., 333; *Mack v. Patchin*, 29 How. Pr., 20; *Margraf v. Muir*, 57 N. Y., 155; *Shannon v. Comstock*, 21 Wend., 456; *Baldwin v. Munn*, 2 Wend., 399; *Peters v. McKeon*, 4 Den., 546; Field on Damages, pp. 58, 61 and 402-3. If any thing has been paid, the amount of the consideration and not the value of the land measures the damages, *Hertzog v. Hertzog*, 34 Penn. St., 418; *McNair v. Compton*, 35 id., 23. Interest is not allowable on an uncertain demand or an unliquidated claim for services, *Selleck v. French*, 1 Am. Lead. Cas., 500-503; *Reid v. Renss. Glass Factory*, 3 Cow., 393; *Van Beuren v. Van Gaasbeck*, 4 Cow., 496; *Holmes v. Rankin*, 17 Barb., 454; *Gallup v. Perue*, 10 Hun, 526; *Begole v. McKenzie*, 26 Mich. 470; nor unless it is claimed in the declaration, *Palmer v. Stockwell*, 9 Gray, 237.

*McDonell & Mann* and *Hatch & Cooley* for defendant in error. Loss of profits is an injury sustained and must be compensated in damages, *Burrell v. N. Y. & S. Salt Co.*, 14 Mich., 39. An agent earns his commission on a sale if he only introduces the purchaser to the vendor and the sale follows, *Knapp v. Wallace*, 41 N. Y., 477; *Stillman v. Mitchell*, 2 Robert., 523; *Ludlow v. Carman*, 2 Hilton, 107; *Vreeland v. Vetterlein*, 33 N. J., 247; *Schwartze v. Yearly*, 31 Md., 270; *Lincoln v. McClatchie*, 36 Conn., 136; *Cook v. Fiske*, 12 Gray, 491. A witness can read from any paper that he knows is correct to refresh his recollection, *Pinney v. Andrus*, 41 Vt., 631; *Dunlap v. Berry*, 5 Ill., 330. A witness' inference from a remark is not responsive to a question as to what was said, *Hamilton v. People*, 29 Mich., 185.

GRAVES, J. May 3d, 1873, these parties agreed in writing as follows:

"The said Green for and in consideration of the promises on the part of the said McFarlan and McCreery hereinafter contained hereby agrees to start for the woods in the district of Bayfield, Wisconsin, and select and secure the entry at the U. S. land office or at the land office of the State of Wisconsin all the choice pine timbered lands he may be able to find subject to entry, not to exceed the amount of ten thousand acres (or more if the said McFarlan and McCreery so determine), which he may be able to find before the first day of December next; the said Green to serve no other interest in looking lands up to said date. Said lands so selected and located to cut at the rate of one hundred and fifty thousand feet to each forty acre lot of U. S. lands located within what is known as the ten-mile railroad limits, and one hundred thousand feet and upwards to each forty acres of ten shilling lands; all of said lands to be within five miles of a navigable stream, but a portion of said lands where the pine timber is of excellent quality, and estimated to cut three hundred thousand feet and upwards to the forty-acre lot, may be located at a distance of not exceeding eight miles from a navigable stream.

The said McFarlan and McCreery agree to furnish the money with which to locate; said lands to be examined and selected by said Green as soon as the descriptions are from time to time obtained; said lands to be located in the names of said McFarlan and McCreery, the said Green being authorized to draw his draft on demand on the said McFarlan and McCreery for all said lands so located as aforesaid.

The said McFarlan and McCreery also agree to advance to said Green, from time to time, as he may require, the money necessary to defray his expenses in looking up said lands, which advance for looking up said lands is to be returned to said McFarlan and McCreery with interest at ten per cent. per annum, as soon as said lands or any portion of them may be sold, or sooner if the said Green may desire, and whenever said money so advanced, together with interest as aforesaid, is repaid to the said McFarlan and McCreery, they are to convey to said Green by good and sufficient warranty deed an undivided one-fifth of all of said lands so located by him in their said names; but in case the lands are not deeded to said Green until after the same become taxable, and in the event also that the said McFarlan and McCreery pay the taxes assessed against said land, then the said Green is to pay them the undivided one-fifth part of all taxes so paid with interest at ten per cent. per annum the same as provided for other advances made."

Soon after this contract Green went to Bayfield and proceeded to select lands and plaintiffs in error provided funds. These were not always kept ready and there were some short intervals of delay. By the last of September Green had selected and noted about 6,473 96-100 acres, of which all but about 8,000 had been paid for and duly entered. Funds had been supplied by drafts, but were exhausted, and hence the means were not at hand to pay for this last body. All the lands selected were those of the United States, and the price was $2.50 per acre. Green made a demand draft on plaintiffs in error for a little less than $6,000. Meanwhile the memorable money panic of that year sprang up and swept over the country. It caught this enterprise and the two projectors bound to furnish capital. They immediately wrote Green that they could not obtain funds to locate any more lands and could not meet drafts for more than his personal expenses, and that he was at liberty to locate for others. The business stopped. The draft went to protest and Green returned. This was in the fall of 1873. From time to time until May following the parties negotiated and exchanged views concerning their adventure, and at that time Green went again to Bayfield supplied by plaintiffs in error with $6,000 to be applied as far as it would reach in paying for lands so selected and not paid for the year before. This money was so applied and it was the last provided for taking lands under the contract. The quantity which had been bought was 5,473 96-100 acres, leaving unobtained of the 10,000 acres specified some 4,526 acres and a fraction, and of which one-fifth, or Green's share, was 905 acres.

In June, 1875, the 5,473 acres and a fraction were sold and conveyed by the concurrence of all the parties to a gentleman in Ontario for $4.50 per acre, $6,000 being paid down and the balance being secured by mortgage. The advances for expenses and taxes with the interest were settled and Green's share in the lands sold was arranged as he desired. He subsequently

advanced claims on the foot of his transactions with plaintiffs in error which they refused to recognize, and after some ineffectual efforts to agree upon terms, this suit was brought. He set up two demands. By the first he claimed the full market value which one-fifth of the unobtained balance of 10,000 acres would have borne if such balance had been acquired. By the second he maintained that it was agreed between him and the plaintiffs in error that in case he made a sale of the purchased land they would give him five per cent. commissions on the sale price of their four-fifths, and that the sale which occurred was made by him in the sense of this arrangement, and hence that he was entitled to the specified commissions.

The plaintiffs in error claimed and insisted that when they treated with Green in May, 1874, and provided $6,000 to be consumed in paying for lands he had previously selected, it was distinctly understood and agreed that no demand should be made against them on account of their previous failure to supply funds, and that no further demand should be urged against them for funds to enter the residue of the 10,000 acres. They contended that the $6,000 was supplied upon the faith and only upon the faith of such understanding. They also positively denied making any agreement to pay commissions to Green for bringing about a sale of the common property. The verbal testimony was confined to the parties, and on the points here mentioned they were directly opposed.

There was also wide difference of opinion as to the measure of the damages proper to be allowed for the breach of contract in not providing funds to get the balance of the 10,000 acres in case that ground of action should not be found to have been adjusted.

The defendant in error contended he was entitled to the full value of the one-fifth of the unobtained residuum; and which value as he urged was at least, as shown by the sale of the quantity secured under the

contract, $4.50 per acre, less the expense of selecting and noting what had not been already selected and noted. On the other hand the plaintiffs in error maintained that no satisfactory data were obtainable for getting at the value of unselected lands coming within the scope of the conditions and requirements of the contract; and further, that under the rules of law applicable to the state of the case it was improper to go beyond allowing what would have been a reasonable compensation for selecting and noting an amount equal to Green's share, or 905 acres.

The circuit judge in terms assumed to discard both of these methods, and he instructed the jury that in case they should not find this ground of action to have been settled and closed, to allow upon one-fifth of what had been previously selected and noted for entry, of the balance of the 10,000 acres, the full cost or value as shown by the government selling price, namely $2.50 per acre, and upon one-fifth of what had not been previously selected and noted for entry of said balance, the same amount per acre, less however the fair expense of selecting and noting, and then to add to the total of these amounts interest thereon from the summer of 1874 when all further steps to take more land under the contract ceased, and this scheme was thought to be recommended not only on account of its being plain and practical, but likewise for being fair, since, as the case itself imported, the defendant in error might have procured the 905 acres for the principal sum indicated and been in the same situation as though the land had been obtained under the contract.

In regard to the claim for commissions, a charge was requested by plaintiffs in error that no recovery could be had unless defendant in error had proved a contract on the part of both to pay him commissions for selling the property, and further, unless it was found that the sale was effected by Green, and not by McCreery and McFarlan.

Instead of charging in these terms, the judge explained the relations of the parties and the conflict in their testimony and that Green was as much interested as plaintiffs in error in a sale, and proceeded to instruct the jury that they would have to look at the surroundings of the case and decide whether it appeared by a preponderance of evidence that an arrangement was made by which a commission was to be paid for the sale of the land; and in case they should find that plaintiffs in error promised Green a commission of five per cent. for the sale of this land, he would then be entitled to it, and that it was a simple question of fact for them to determine.

January 26th, 1877, the jury found in Green's favor for $3,672.50, and McFarlan and McCreery brought error.

1. The measure of redress the judge allowed for the breach in not providing money to buy the rest of the 10,000 acres, was as favorable to plaintiffs in error as any they could rightly urge.

The relation into which the parties were brought by the written contract above recited was not strictly and exclusively that of principal and agent, or master and servant, or of vendor and purchaser. The transaction was a joint adventure upon mutual views of speculation, and it contemplated that the plaintiffs in error should supply capital and that defendant in error should give his personal efforts and attention and certain acquired knowledge, and that the lands obtained pursuant to the scheme should be divided between the adventurers, the plaintiffs in error receiving four-fifths and defendant in error one-fifth.

The occurrence of the panic which suddenly spread through the country and for a time pretty generally prevented the obtainment of money for ordinary business, and more particularly for speculative activities, was not foreseen and not provided against by the contract; and it was not an event which in law in the absence of stip-

ulation the plaintiffs in error were authorized to urge either to justify or excuse their not going on or as adequate to mitigate their liability.   *Harmony v. Bingham,* 2 Kern., 99; *Booth v. Spuyten Duyvil Rolling Mill Co.,* 60 N. Y., 487; *Tompkins v. Dudley,* 25 N. Y.. 272; *School District No. 1 v. Dauchy,* 25 Conn., 530; *Wareham Bank v. Burt,* 5 Allen, 113; *Phillips v. Stevens,* 16 Mass., 238; *Beebe v. Johnson,* 19 Wend., 500; *Atkinson v. Ritchie,* 10 East, 530; *Taylor v. Caldwell,* 3 Best & S., 826-833; *Dermott v. Jones,* 2 Wall., 1; *Niblo v. Binsse,* 1 Keyes, 476; *Delaware, L. & W. R. R. Co. v. Bowns,* 58 N. Y., 573; *Lock v. Furze,* L. R. 1 C. P., 441; *Driggs v. Dwight,* 17 Wend., 71.

It was needful that the charge should be adapted to the case as it was and not as it might have been possibly, and it would have been irregular to have assumed or implied that items of evidence had been given which had not been given, or that certain facts were in dispute which had not been disputed at all.   By the terms of the contract Green had until December first to make up the 10,000 acres, and his judgment was to decide between twenty shilling and ten shilling lands.   There was no evidence, however, that ten shilling lands which would meet the defined conditions could be obtained, and hence no evidence of a state of things permitting choice and no ground for framing any part of the charge as though such lands were reasonably procurable.   The defendant in error swore, and it was not disputed, that plaintiffs in error caused some delay before the last interruption in the season of 1873, and still there was no evidence that he might not easily have made up the whole quantity in twenty shilling land by December first if the plaintiffs in error had kept their promise.   Their default and suspension amounted to a prevention of performance on his part.   *Blanchard v. The Inhabitants of Blackstone,* 102 Mass., 343; *Niblo v. Binsse,* supra; *Phil. Wil. & Balt. R. R. Co. v. Howard,* 13 How., 307; *Myers v. York & Cumberland R. R. Co.,* 2 Curt. C. C. Rep., 28; *Master-*

*ton v. The Mayor*, 7 Hill, 61; *Exposito v. Bowden*, 30 E. L. & E., 336; *Burrell v. N. Y. & Sag. Solar Salt Co.*, 14 Mich., 34; *Rider v. Pease*, 119 Mass., 492; *Revere v. Boston Copper Co.*, 15 Pick., 351; *Howard v. Daly*, 61 N. Y., 362. And since there was no fact of which the judge could take notice, or any evidence adduced to show that defendant in error might not or could not have obtained the full quantity if the plaintiffs in error had performed, he was entitled to say, in view of their having arrested his action and virtually stopped him when he was going on regularly, that it should be taken as *prima facie* true that he would have procured the whole 10,000 acres in due season in case the plaintiffs in error had made no default.

The point is made that the rule generally applied where persons in good faith contract to sell lands and are unable to perform on arrival of the time, is the proper rule here, and *Hammond v. Hannin*, 21 Mich., 374, and *Conger v. Weaver*, 20 N. Y., 140, are cited, with other decisions, to show that under that rule the damages must have been not much if any more than nominal. Whatever analogy may be claimed to exist between the case at bar and a class of cases brought on agreements to sell land, it is quite clear that those cited have no application. If the plaintiffs in error insist on being regarded as in the situation of vendors unable to perform, they surely cannot ignore a part of the facts pertaining to their actual position and necessarily serving to qualify it. Why were they not able to perform? Simply because, by their own default they prevented Green from getting for them, pursuant to the agreement, the very land which by the same agreement they were to convey to him. In other words they disabled themselves, and "all the cases admit" says Lord Alvanley in *Touteng v. Hubbard*, 3 B. & P., 302, "that where a party has been disabled from performing his contract by his own default, it is not competent to him to allege the circumstances by which he was prevented as an excuse for his omission;" and

"if a man binds himself to do certain acts which he afterwards renders himself unable to perform, he thereby dispenses with the performance of conditions precedent to the act which he has so rendered himself unable to perform." *Hotham v. E. Ind. Co.*, 1 T. R., 638; *Moses v. Bierling*, 31 N. Y., 462; *Kock v. Emmerling*, 22 How., 69. The cases of *Hammond v. Hannin* and *Conger v. Weaver* belong to a class where the vendor sells in the reasonable belief that he can perform, and where in good faith he endeavors to perform, and not to cases where he disables himself or where he agrees to sell what he knows at the time he has no power to sell. This last distinction is pointed out in *Pumpelly v. Phelps*, 40 N. Y., 59, and the court refer to *Conger v. Weaver* and kindred decisions, and after observing that they only authorize nominal damages, proceed to say: "The rule is otherwise, however, where a party contracts to sell lands which he knows at the time he has not the power to sell and convey; and if he violates his contract in the latter case he should be held to make good to the vendee the loss of his bargain; and it does not excuse the vendor that he may have acted in good faith and believed when he entered into the contract that he should be able to procure a good title for his purchaser." A large number of authorities are cited to the proposition. Now, so far as recourse may be had to cases upon agreements to sell lands, for the principle which should govern in the present action, it must be to those of the class last named and not to the class to which *Hammond v. Hannin* and *Conger v. Weaver* belong.

When the plaintiffs in error entered into their contract it was well understood of course on both sides that the land Green was to have was not only not yet purchased, but not identified, and both parties considered that such lands were certainly worth at least the government price, with the necessary expense of selection and entering added, and there was no evidence that they were mistaken or that the government asked too much. On the

contrary, the presumptions were the other way. Besides, we have the admissions of all the parties that the whole tract which had been taken under the contract was actually sold the fore 'part of the summer of 1875 for $4.50 per acre, or between one and two dollars in advance of cost. It was hence quite just for the judge to presume upon the state of the case that the lands not taken would have been worth at least the amount supposed by the charge, and that Green could have obtained that or more at once. See *Brigham v. Evans*, 113 Mass., 538.

The mass of adjudications bearing upon the question of damages as presented by the facts in this record would allow a recovery by the plaintiff to the extent of what he would have gained if he had been permitted to complete the contract, providing however, such damages would be proximate and a natural consequence of defendants' breach and made to appear by sufficient reasonably certain data. Several of these authorities have been cited. They demonstrate that the allowance of the government price for what had been selected, and the same price less the expense of selection for what had not been selected, with the interest by way of damages, was certainly no more than the facts justified. There is no occasion for saying whether or not the judge ought to have gone further. The defendant in error acquiesced in the rule laid down in the charge. Among other authorities see *Myers v. The R. R. Co.; R. R. Co. v. Howard; Masterton v. The Mayor; Lock v. Furze; Driggs v. Dwight; Revere v. Boston Copper Co.*, supra; *Dyer v. Rich*, 1 Met., 180; *Clark v. Marsiglia*, 1 Denio., 317; *Brinckerhoff v. Phelps*, 24 Barb., 100; *Howard v. Daly*, supra. That an item of the amount to be given was allowed under the name of interest was not important. *Edwards v. Sanborn*, 6 Mich., 348; *Kelly v. Waters*, 31 Mich., 404; *Brinckerhoff v. Phelps*, supra; *Van Rensselaer v. Jewett*, 2 Comst., 135; *Sargent v. Franklin Ins. Co.*, 8 Pick., 90; *Holmes v. Misroon*, 1 Const. [S. C.], 21; *Hull v. Caldwell*, 6 J. J. Marsh., 208; 3 Parsons on Cont. [6 ed.], 105; *Selleck v. French*, 1 Conn., 32.

2. It is alleged as error that the charge respecting the claim made for commissions did not pursue the request and inform the jury that before they could find for defendant in error for that cause they must be satisfied "that the sale was effected by the plaintiff and not by the defendants."

If the sense probably intended by this passage had been unobjectionable, its language not explained or qualified would have been calculated to mislead.

All the parties were interested as proprietors and no terms had been previously settled, and it was never claimed or imagined that defendant in error was or had been empowered to make the entire bargain and by himself transact a complete sale. All were to be consulted and to confer together in regard to the terms offered and to be proposed and upon the acceptance of any given proposition, and no sale could be entirely "effected" without the act of each and the concurrence of all. Hence no sale in the sense of a binding consummated agreement or in the sense of an executed conveyance was contemplated. The supposition of such a meaning would be absurd. All knew very well that defendant in error could do nothing of the kind, and the minds of the parties must be supposed to have agreed upon what was reasonable and consistent. The request, however, was so worded as to be extremely liable to lead the jury to understand that the right to commissions depended on its appearing that defendant in error made the sale entirely by himself and thereby passed the right to the property to the purchaser; or, in other words, on his having done what nobody contemplated he should do, and what was not legally possible for him to do in the state of things in which he was to act. But if the request was improper by reason of the misleading tendency of its expressions, it was also objectionable on the ground that it was in substance an incorrect exposition of the legal sense of Green's undertaking. Considering how the parties were situated, and that they were jointly interested in the property and were to unite upon the terms

of sale and respectively assent to the fact of sale itself, it is evident that what was meant was no more than that defendant in error should be "the procuring cause of the sale;" that he should find a purchaser in a situation and ready and willing to complete the purchase on terms acceptable to the parties, and not that he should work out by himself a definite and complete bargain, or a sale executed. *Fraser v. Wyckoff*, 63 N. Y., 445; *Smith v. McGovern*, 65 N. Y., 574; *Rice v. Mayo*, 107 Mass., 550; *Pearson v. Mason*, 120 Mass., 53; *Bornstein v. Lans*, 104 Mass., 214; *McGavock v. Woodlief*, 20 How., 221; *Coleman's Ex'r v. Mead*, 13 Bush (Ky.), 358; *Kock v. Emmerling*, supra. The allowance of interest was not unlawful. If the commissions were earned the amount was reduced to a sum certain and the plaintiffs in error were at once indebted therefor. It is a general rule here that a failure to pay money promised when by law it ought to be paid authorizes the allowance of interest in the nature of damages for the improper detention of the sum so promised. Upon thorough examination it seems plain that the charge was favorable to plaintiffs in error, and that if the result was not just to them they have no reasonable cause for complaint against the directions to the jury.

3. There are several allegations of error relative to evidence. One is not supported by any exception; in others no ground of objection was stated, and others still are subject to what has been said already.

In view of the rule of damages laid down by the judge, and which as we have seen the plaintiffs in error cannot complain of, it is very apparent that it was necessary to inquire into the expense of selecting and noting lands to meet the requirements of the contract. Moreover, the position of plaintiffs in error that such expense so far as it had been incurred might be recoverable in addition to nominal damages to be given for the techni-

cal breach, conceded the propriety of evidence of such expense so far as it had actually arisen.

Complaint is made that defendant in error was allowed to read to the jury from a memorandum he had copied recently from originals he had made some time before. When the objection was made, the judge observed that "he supposed he could read from any paper he knew to be correct for the purpose of refreshing his recollection."

Error is not to be intended. It must be made to appear on the face of the record. The party who alleges it, is required to prove it, and it is incumbent upon him to see that the record is so shaped as to make it distinctly manifest. Now it does not appear that the memorandum mentioned was read from at all after the objection. *Findley v. The State*, 5 Blackf., 576. If it had appeared, however, it is not certain that the ruling would have been erroneous. *Beaubien v. Cicotte*, 12 Mich., 459, 486. See also *Insurance Co. v. Weides*, 14 Wall., 375; *Bank v. Culver*, 2 Hill, 531; *Guy v. Mead*, 22 N. Y., 466; *Lewis v. Ingersoll*, 1 Keyes, 347, 358; *Van Dyne v. Thayre*, 19 Wend., 162; *Yale v. Comstock*, 112 Mass., 267; *Watts v. Sawyer*, 55 N. H., 38; *Taylor v. Stringer*, 1 Hilton, 377.

It is objected that it was improper for defendant in error to give the statement made in 1874 by the Receiver of the land office to him that a large amount of the lands selected the year before and not entered had been taken by others. No ground of objection was stated, and the answer was not injurious. It is now contended that the statement was hearsay. It was part of a conversation between defendant in error and the Receiver relative to indulgence sought of him by plaintiffs in error through defendant in error as to the time of forwarding funds to enter lands selected the summer previous, and it was part of the specific transaction and constituted

information obtained of the Receiver on a mutual reference by the parties to him therefor. It was hence not hearsay, but original evidence between the parties.

The defendant in error identified an itemized account which he had made of certain of his expenses, and being offered in evidence it was objected to, but no ground of objection was stated. The court admitted it as part of Green's evidence and in connection with his oral evidence on the same subject. The record is blind in regard to this point, and the writing itself does not appear in the bill of exceptions. So far as the ruling finds explanation in the record it does not seem to have been improper.

In the course of his cross-examination, McFarlan was asked in regard to the intention in his own mind up to the alleged settlement in May, 1874, as to taking up any of the lands selected but not entered the year previous, and he proceeded to make reply, but was interrupted in the midst of his answer by his counsel, who objected to what he intended. The judge remarked that he could proceed, but the matter was dropped and the answer left unfinished. The counsel for defendant in error submitted to the objection. The exception is without force. *Kershaw v. Wright*, 115 Mass., 361.

During the same cross-examination, and shortly afterwards, McFarlan was asked in substance to give the terms of settlement they proposed to defendant in error at the interview at McCreery's office in May, 1874, and he specified them. He was then asked, "What did he [Green] say to that?" and McFarlan answered, "I could not say what he replied to it; it appeared to be all satisfactory and he assented to it." The last sentence, which embodied McFarlan's inference, was stricken out on motion of the cross-examining counsel on the ground that it was not responsive to his question. This was entirely proper. The remark was most obviously uncalled for by the question, and quite irresponsive. If it were admitted that a party or ordinary witness even might

thrust into the case on cross-examination any inference or notion of his own, however foreign to any inquiry made of him, and compel the cross-examining party to submit to its introduction, no one would dare to interrogate his adversary's witness, and cross-examination would cease to be practiced. The right to interrogate implies the right to exact responsive answers, and the entire sense of the proceeding is repugnant to the idea that the witness is to control in regard to what is to be stated.

It was not error to allow Green to adduce evidence to show that he might have procured the whole 10,000 acres if the plaintiffs in error had kept their agreement; although as we have seen, the unquestioned facts imported *prima facie* as between these parties in this action that such was the case. The extent of his injury by the breach of contract committed by plaintiffs in error depended on whether he might or might not have obtained the full complement of 10,000 acres.

Several matters were objected to upon the alleged ground that no recovery could be had for gains or profits. None of the evidence thus objected to was of much significance towards making out any case on that theory. But whatever possible bearing it might have had in that way was entirely obviated and repelled by the charge of the court. The rule of damages laid down and the finding by the jury demonstrate that it worked no harm to plaintiffs in error. It is only necessary to analyze the verdict under the evidence and the judge's charge to see that nothing was allowed but the commissions, the cost price of the land at $2.50 per acre less the cost of selection for that not selected, and interest.

This disposes of all points, and the result is that the judgment should be affirmed with costs.

CAMPBELL, C. J., and COOLEY, J., concurred. MARSTON, J., did not sit in this case.