WILLIAM G. IRVING, Respondent, *v.* SUMNER E. CLAGGETT, Appellant.

*Supreme Court, First Department, General Term, March* 28, 1890.

*Evidence. Memoranda*—To prove the number of days during which detectives performed services, by introduction of books, in an action for their services, the performance of the services charged therein must have been shown to have been rendered and reported accurately before making the charges, and to have been correctly entered subsequently in such books. The law will not permit the entries in the books to be read in evidence, upon less proof as to their correctness.
See note at end of case.

Appeal from judgment on report of referee.

Argued before VAN BRUNT, P.J., and BRADY and DANIELS, J.J.

*Nathaniel A. Prentiss*, for appellant.

*J. A. Dennison*, for respondent.

DANIELS, J.—The plaintiff's demand was for services rendered by himself, and by other persons in his employment, as detectives, and for money expended by him, in searching for and securing witnesses to be used in support

of a contest made concerning a will, which was heard and tried before the surrogate of the county of New York. For himself, he claimed to have become entitled by the result of the contest to the sum of $2,500; and the residue of the charges for services were for detectives in his employment in and about the same business, amounting to the sum of $5,570. It was generally stated by himself in the evidence which he gave upon the trial, and by the witness Wendell, who was examined on behalf of the defendants, that detectives were employed by the plaintiff, and rendered services in discovering and obtaining testimony and witnesses to aid the defendants in their contest. And, to prove the number of days during which these detectives rendered their services, and for which it was claimed the plaintiff was to receive the sum of $10 a day, he produced, and offered to read in evidence, a book in which the entries had been made by himself. These entries are stated to have been first made in another book, which was not produced upon the trial, but which had been lost or disposed of, and was consequently out of the power of the plaintiff. The entries made in that book, he testified, were from slips and reports returned to him by the detectives, and that the book produced by him contained an accurate copy of the entries made in the first book from these slips and reports. The slips themselves were not produced, but they had been lost or destroyed; and no evidence, except of the most general nature, was given on behalf of the plaintiff to prove that the statements contained in the reports and slips were truthful, or that the services for which the charges were made had in fact been rendered. There was this general evidence that he at different times, and also this other witness, had observed the different detectives apparently in the discharge of their duties. But these observations were casual only, and in no manner proved that the detectives had performed the extent of services mentioned and charged for in the book. When the book was offered to be used in evidence,

it was objected to as having been made upon reports received from other persons, and as incompetent. But the objections were overruled, and the defendant's counsel excepted, and the book was permitted to be used by way of evidence in support of these charges. The plaintiff, without it, had no recollection of the items, and was dependent upon these charges in the book to make out and sustain his action for the compensation claimed to be payable to the different detectives. After it was ruled by the referee that the book might be used by the witness to make out his case, it was then agreed that a copy of the entries in the book might be put in evidence in the case, subject to the objections and exceptions already taken, and that copy was introduced; and upon the force and effect of this evidence the referee made his report, by which he allowed the charges made in favor of the plaintiff, and, after deducting $3,600 paid to him, directed a judgment for the sum of $5,331.88, the balance found to be due him, together with interest. These items of charges for the services of detectives were not otherwise proved than by the entries made in the book by the plaintiff from the preceding book, in which the entries were made from the slips made and reports furnished of the services claimed to have been rendered; and the proof upon which the case was heard and decided, was, in substance and effect, no more than what the detectives themselves had stated in their reports, or was mentioned in these slips, as to the extent of the services performed by them. The evidence traced back in this manner consisted, as to the extent of the charges, of no more than the unsworn statements or reports of the detectives, and that was not evidence against the defendants in this action, and they were not made evidence by the circumstance that what they had reported was communicated to the attorney for the defendant; for it was not shown that it was reported to him the extent of services they claimed to have performed, or that he assented to or accepted their

reports or statements for that object, but what seems to have been reported to him was what these detectives had observed and discovered, and the witnesses who would be obtained by reason of their services. This evidence fell far short of what is required to authenticate charges made in this manner, so as to render them admissible against the party or parties to be affected by the charges. What should have been done to make this book or the charges contained in it evidence was proof from the detectives themselves, or otherwise, that they truthfully reported to the plaintiff the time devoted by themselves to this employment; and then after that proof should be made, the further evidence of the plaintiff that the charges were accurately entered in the books might have rendered them evidence. The legal rule upon this subject was very fully examined in Mayor, etc., of New York v. Railroad Co., 102 N. Y. 572. But there the performance of the services charged in the books were shown to have been rendered and reported accurately before making the charges, and to have been correctly entered in the books which were received; and that is the least, in a case of this description, upon which the law will permit the entries in the books to be read in evidence. Gould v. Conway, 59 Barb. 355; Ives v. Waters, 30 Hun, 297; Mayor, etc., of New York v. Railroad Co., 31 Hun, 241. In this last case the opinion to this effect was delivered by Mr. Justice BRADY. An exception exists in favor of a party keeping his own books where, upon proof by persons with whom he has settled by the books, that he keeps true and honest accounts, and that some of the articles have been delivered, the books may be read. McGoldrick v. Traphagen, 88 N. Y. 334. But this case is not within that exception. No further evidence proving the extent of the services of the detectives was given sustaining the ruling of the referee by which these entries were permitted to be read as evidence. The testimony of Wandell, one of the detectives, on the

contrary, was to the effect that the entries made in the first book were made by a young man in the plaintiff's employment; and, if he was right as to the fact, then still further evidence was required from this person to prove that his entries were correctly made. In no view of the evidence, as it was given, were the entries entitled to be received or acted upon as proof by the referee; and the judgment should be reversed, and a new trial ordered, with costs to the defendant to abide the event.

VAN BRUNT, P. J., concurs.

BRADY, J. (dissenting).—The defendants were the heirs and next of kin of James H. Payne, who died in December, 1885. One John H. Wardwell commenced proceedings before the surrogate of this county to establish an alleged lost will by the terms of which the estate of James H. Payne was given to him. Theodore H. Swift was the attorney of record for the defendants in that proceeding. He was duly authorized by them to appear for them in the proceeding mentioned, and in any and all proceedings which might be brought against the estate of the deceased, and to do any and all things necessary to protect their interests therein. On the 8th day of October, 1886, he made an agreement with the plaintiff for his employment, and that of a number of detectives, for work to be done on the part of his clients, who were contestants before the surrogate, agreeing to pay them for their services $10 a day, and their expenses and disbursements, and also, as an inducement to the plaintiff to give his personal time and attention to the case, agreeing to pay him $2,000 or $2,500 in case the defendants were successful. Pursuant to this contract the plaintiff employed a number of men, entered upon the performance of his duties, and was continuously engaged therein from the 9th day of October, 1886, to the 2d of February, 1887, both inclusive, and rendered services which were, substantially,

continuous, night and day during the period mentioned. He was personally present every day during the trial, and made his reports every day to the attorney and counselor for the defendants of what his men had done, and was in consultation with them every day, and some times more than once a day; all of which work, it appears, was necessary for the protection of the defendants' interests. It also appears that the work for each day was laid out under the immediate direction of the defendants' attorney and counsel, and that the information collected was used on the trial before the surrogate; and it does not appear that any complaint was ever made as to the manner in which these services were performed, or that the expenses incurred and charged were improper. It also appeared that the defendants' counsel expressed a wish that the case should be thoroughly investigated, the object being to frustrate what was conceived to be a fraudulent scheme on the part of Wardwell. The contestants were successful. It must be said, further, that there was no contest as to the fact that there was a contract made with the plaintiff, or that services were rendered under it; the real issue being as to the extent and value of the services, and as to the additional sum to be paid to the plaintiff in case of success. The referee found in favor of the plaintiff the balance due under the general employment on the terms mentioned, and that $2,500 additional was also due to him under the contract.

At the close of the plaintiff's case, however, the defendants' counsel moved to dismiss the complaint upon three grounds: "*First*, that there was no evidence of the rendition of services in excess of the sum received by the plaintiff; *second*, that the plaintiff had failed to prove that what was done by him under his employment by Swift was within the scope of the power conferred upon the latter: *third*, that the testimony proved the agreement to have been made, and that the credit was given by the plaintiff to the administrators, and the action should therefore have been

brought against them. There was no defense set up in the answer suggesting this last proposition. Independently of which, the testimony clearly shows that the agreement was made with Swift, who was the agent and attorney of the defendants, and in reference to whom it appeared that he would not have taken the case without such authority from the heirs. With regard to the second proposition, it is only necessary to say that it already appears that the heirs conferred upon Swift the power to do what he deemed necessary for the protection of their interests; and what was done, therefore, by him, was done with that end in view. In this result the plaintiff's claim is sustained by the testimony of Titus, who, it appears, was subsequently employed, in the defendants' interest, to oversee that the detective work was done, and who was in constant communication and consultation with Mr. Swift. In relation to the first proposition, it must be said that it concedes the employment of the plaintiff to have been a proper one, under due authority; for the reason that it disavows only the rendition of services in excess of the amount paid, and which was clearly paid under the contract made with the plaintiff.

The serious contention, however, springs out of the peculiar character of the evidence by which the services were proved. The plaintiff produced his book of account. It was one kept by him in the ordinary course of his business, the entries in which were made in his own handwriting. It was made up in the following way: Every morning, each of the detectives who had been engaged the day or the night before reported what work he had done on what were called "slips." These were sent to Mr. Swift, the attorney. The plaintiff entered these results, also, and upon his day-book the name of each man, the amount of the expenses paid him, and the amount of his salary; and from this day-book and the slips the account-book produced was made up. It was a book of original entry, except the dates and the amount of expenses. The day-book was lost and from the evidence

it seemed to have been carried away and sold, with the waste paper of the plaintiff's office. The plaintiff testifies that the entries were correctly made from the slips given to him, and were made at or near the date of the slips; and it seems that at the time of the receipt of the slips he was well advised of their accuracy, from his knowledge of the services to which they related. He said that he was out every day from morning until night; that he was all over, at all times, overseeing his men; that he saw them every day,—three or four times a day,—so that he had a personal knowledge as to the rendition of the services by the persons whom he employed; and this evidence was supplemented by that of Titus, who, we have seen, was especially employed to oversee the detective work. He approved of the reports of the men, having, if not ample, certainly sufficient, knowledge upon the subject to state that their work was done. In addition to which, it must be kept in view that the result of these reports was communicated daily to the defendants' attorney, Swift, and whatever was considered valuable used to protect the defendants' interests. But the objection still exists that none of the detectives whose work is indicated by the slips appeared as witnesses, and that in that respect the testimony upon which the plaintiff's case rests differs from some of the adjudicated cases. But this difference is supplied sufficiently, it is thought, within the doctrine of McGoldrick *v.* Traphagen, 88 N. Y. 334; and Mayor, etc., of New York *v.* Railroad Co., 102 N. Y. 572, by the statement of the plaintiff of his own work, and of Mr. Titus of his work, and their supervison of the men engaged, and indeed, of one of defendants' witnesses, Mr. Wandell, that the men were engaged in doing the work which was contemplated by the agreement between the plaintiff and Swift, acting on behalf of the defendants. The evidence herein showed, thus, the engagement of the men, a report by them of each day's work to the plaintiff, his own personal inspection of them while at work, and that of Mr.

Titus, and the record of the slips stated, with their results. This proof is regarded as stronger than that which was held to be sufficient in the case of McGoldrick *v.* Traphagen, *supra*, and as decidedly within the principle stated in Mayor, etc., of New York *v.* Railroad Co., *supra*, in which, where an account had been kept, in the ordinary course of business, of laborers employed in the prosecution of the work, based upon daily reports of the foremen having charge of the men, who, in accordance with their duty, reported to another subordinate of a higher grade, under the same common master, and he also, in the course of his duty, entered the time as reported, and the foreman testified that they made true reports, and the persons who made the entries that he correctly entered them, it was held that entries so made are admissible as evidence to show the amount of work done.

None of the other exceptions call for any particular comment. It is sufficient to say that they are of no significance, and are unavailing.

This leaves for consideration only the further question as to the propriety of awarding to the plaintiff the extra compensation of $2,500 which was given by the referee, and which, as to amount, is abundantly sustained. The estate was large, and the amount in jeopardy was considerable ; and more than ordinary devotion was excited by the voluntary promise that if the attempt to establish the alleged lost will was defeated an extra compensation would be given. This seems to have stimulated the plaintiff to extra exertion; for, according to his evidence, which was not successfully gainsaid, he labored in the cause night and day, and was at all times at his post when required, and no complaint was made against him or his methods by any person representing the defendant's interests. It may be said, in conclusion, that no doubt can be entertained of the value and efficiency of his services, and that the claim, therefore, seems to be in all respects meritorious. For these reasons the judgment should be affirmed, with costs.

### NOTE ON "MEMORANDUM EVIDENCE."

This note exhibits the former, as well as the present, rules relating to the admissibility of memoranda in evidence, and the essentials of its competency at the present time.

*Former rule.*—The rule at first was that a written memorandum might be referred to by a witness to refresh his memory, but he must swear to the truth of the facts or his statement is not evidence. Lawrence v. Barker, 5 Wend. 301. It was not sufficient for him to swear that he made a memorandum which he believes to be true, and that he relies upon it without any present recollection of the facts. Id.

In Feeter v. Heath, 11 Wend. 477, a witness was permitted to refresh his memory, on his examination, by the inspection of an affidavit which he had himself sworn to five years before, when the facts as to which he was called on to testify were comparatively of recent occurrence. Witnesses are in the constant habit of refreshing their recollection, particularly as to dates and numbers, by examining books and papers, which they know to be correct, before they go into court to give their evidence. If they have neglected to do so before going into court, there is no valid reason why they should not be permitted to inspect the written memoranda in court, provided they can, after such inspection, distinctly recollect the facts independent of the written memoranda or document; especially where there is no ground to suspect that there has been any tampering with the witnesses, or that any abuse of the privilege is intended. Such is the frailty of human memory that very few witnesses would be able to testify as to particular dates, numbers, quantities and sums, after the lapse of a few years, if they were not permitted to refer to papers and writings which they knew to be correct at the time they were made.

In bank of Monroe v. Culver, 2 Hill, 531, the witness said his uniform practise was to make his entries at the time the transactions occurred, and to make them truly according to the facts, that he had no doubt the entries were made in that manner, and were correct; that independent of these entries, he had no recollection of the matters of which he had spoken; nor could he, after examining the entries, say that his recollection was sufficiently refreshed to enable him to testify to the transaction without reference to the entries. And it was held that memoranda and entries thus verified should be allowed to speak for themselves. In Merrill v. I. & O. R. R. Co., 16 Wend. 586, although it was not then absolutely necessary to pass upon the question, it was fully considered, and the court came to the conclusion that evidence of this character was admissible. The case of Lawrence v. Barker, *ante*, does not lay down a different rule. The memorandum in that case was not received in evidence for the reason that it was not made in the usual course of business, but only for the convenience

of the witness. There are a multitude of transactions occurring every day in banks, the offices of insurance companies, merchant's-stores, and other places, which, after the lapse of a very brief period, cannot be proved as any other way. It is not to be supposed that officers and clerks in large trading and other business establishments, can call to mind all that has been done in the course of their employment ; and when their original entries and memoranda have been duly authenticated, and there is nothing to excite suspicion, there can be no great danger in allowing them to be admitted in evidence.

In Brewster *v.* Doane, 2 Hill, 537, it was held that entries and memoranda made by third persons in the usual course of business, as notaries, clerks, etc., cannot be given in evidence on the ground merely that they are absent beyond the jurisdiction of the court ; though otherwise, where they are dead..

*Present rules. Requirements.*—In Merrill *v.* I. & O. R. R. Co., *ante,* it was held that a party who had performed labor for another cannot, in an action to recover for such work, produce in evidence check-rolls or accounts, of the number of days' work performed by those in his employment, for the purpose of fixing the amount of work done, without verifying the same by the oath of the agent who made the entries, or kept the accounts, if such agent is living. If the agent is· dead at the time of the trial, original entries made by him in the usual course of business may be produced in evidence ; but the mere fact that he is absent from the state, so as to be beyond the reach of process of the court, will not entitle the party to give such entries in evidence. When original entries are produced, and the person who made them, or saw them made by another knowing them at the time to be true, testified that he made the entries or saw them made and that he believes them to be true, though, at the time of his testifying, he has no recollection of the facts set forth in the entries, such evidence is admissible and *prima facie* sufficient to establish the facts evidenced by the entries ; but such proof, it seems, will not be received, where only a copy of the original entries is produced.

In National Ulster County Bank *v.* Madden, 114 N. Y. 280 ; 23 Abb. N. C. 118 ; reversing 41 Hun, 113, an action was brought to recover the amount of a certain number of checks drawn by the defendant Sarah M. Fowks, by her attorney Horatio Fowks, upon the National Bank of Rondout, and payable to the order of the defendant Madden, and indorsed by him. Madden alone defended, and alleged that the checks, after they were indorsed by him, were altered in respect to the time of payment, so as to make them payable at a future day, without his knowledge or consent. He testified that when he indorsed the several checks, he made a memorandum entry of the date, amounts and time when payable, respectively ; and he was permitted against objection, to read such memoranda to the jury. The main question in the case arose upon the admissibility of these entries in evidence.

The rule in this state prior to the decision in Merrill *v.* Ithaca & Owego R. R. Co., *ante,* was that a witness might refer to his memoranda to re-

fresh his memory, and then was permitted to testify to the facts, provided he could do so independently of it upon his recollection. Feeter v. Heath, *ante ;* Lawrence v. Barker, *ante.*

Formerly, it was the doctrine of the courts of this state that such a paper could not be given in evidence as an independent piece of testimony. The rule was that it might be referred to by a witness to refresh his memory, but he must then swear to the truth of the facts, or his statements would not be evidence. Guy v. Mead, 22 N. Y. 462. Lawrence v. Barker, *ante ;* Feeter v. Heath, *ante.* But since these decisions, the subject has been re-examined, and a different rule now prevails. In Merrill v. I. & O. R. R. Co., *ante,* it was held that original entries might be read in evidence though the witness had forgotten the facts attested by them ; but that the rule was restricted to entries made by a person in the course of his business. In the Bank of Monroe v. Culver, *ante,* the rule is laid down with this limitation, and applied to the case of entries made by clerks in a bank in the regular course of their duties. In Halsey v. Sinsebaugh, 15 N. Y. 485, the memorandum was the minutes of testimony taken by the counsel upon a former trial of the cause, and it was held to be admissible. The paper did not fall within the rule as an entry made in the course of business, like the memoranda and entries made by clerks in banks and the like, and it was not placed on that footing in the opinion of the court. But on the contrary, the judge by whom the opinion was prepared, took pains to say that he did not consider that the case of such a memorandum as the one then in question was governed by any peculiar rule, but that the general question was presented whether any memorandum, made and sworn to in the manner stated, would be admissible. The whole of the reasoning of the opinion, and the cases relied on, sustain the position as a general one, applicable to every species of memorandum, and are not restricted to the routine entries referred to above. The qualification, formerly considered as annexed to the rule, has been abolished. The former doctrine was based upon a misunderstanding of some earlier adjudications, and the principle now established is, at least, equally conducive to the elucidation of truth.

A memorandum made at about the time when the event or transaction mentioned in it took place, and where the author swears that he knows it to have been correct when made, can be read to the jury in connection with the oral testimony of the witness, and the evidence is not confined to what the witness is able to recollect, after refreshing his memory by referring to the memoranda.

The rule laid down by Mr. Phillips, in his work upon evidence, which is, in substance, that such memoranda may be used to refresh the recollection of the witness, but can have no force as evidence, unless the witness, after referring to the memorandum, has a present recollection of the facts to which the memorandum relates, was, no doubt, at one time, supposed to be the true rule, and was adopted and followed in several cases by the courts of this and other states. Lawrence v. Barker, *ante ;* Feeter v. Heath, *ante.* But in the case of State v. Rawls, 2 Nott & McCord, 334, the court showed conclusively that the memoranda produced in Doe v. Perkins, and

Tanner *v.* Taylor, which cases were cited by Mr. Phillips in support of his rule, were not the originals, made by the witness at the time the events occurred, but were mere copies or extracts from such originals taken long afterwards. And in Halsey *v.* Sinsebaugh, *ante,* it was said, that Mr. Phillips fell into an error from not discriminating with sufficient care between the original memorandum itself and a mere copy.

In the case last cited, an attempt was made to impeach one of the defendant's witnesses by showing that he had sworn differently upon a former trial of the cause. The defendant, for the purpose of sustaining his witness, called one of the counsel engaged in the former trial, who testified that he was present at the first trial, and took notes of the testimony, and that he had no doubts of the correctness of his notes, which he produced. The plaintiff's counsel objected to his stating what the witness had said, unless he recollected the testimony independently of his minutes. Upon his saying that he did not, the objection was sustained and the evidence excluded. Upon appeal to the court of appeals, it was held that an original memorandum, made by the witness presently after the facts noted in it transpired, and proved by the same witness at the trial, may be read by him, and is evidence of the facts contained therein, though the witness may have certainly forgotten such facts at the time of the trial. To exclude such a record, when shown to have been honestly made, would be to reject the best and frequently the only means of arriving at truth.

The same remark applies to memoranda in regard to dates, sums, etc., and, although with perhaps less force, to memoranda in general, if made at or about the time when the events which they record transpired, and duly verified by the oath of the party making them.

A great variety of American cases have risen where the witness, having made the entry or memorandum, could swear to his belief of its truth, but had entirely forgotten the facts which he recorded, in which the paper thus attested has been received and read in evidence. A memorandum in respect to a gambling transaction was so received against the criminal. So the notes of evidence by counsel were received, though he could not remember the facts. Clark *v.* Vorce, 15 Wend. 193. So the entry of a bank clerk who had forgotten the fact was received ; F. & M. Bank *v.* Boraef, 1 Rawle, 152; of a notary's clerk who had forgotten the fact he had entered, of notice to an indorser; of a town clerk, who had forgotten his entries of charges for penalties ; of a notary, entering a notice which he had forgotten, with many other cases to the same effect. The result is that original entries, attested by the man who made them, may be read to the jury, though he remembers nothing of the facts which he recorded.

But to make the memorandum competent evidence, the witness must make the entries himself, Glover *v.* Honeywell, 6 Pick. 222, though this rule is not without its exceptions. Where some of the entries were made by the witness and some by the party, it was held that the evidence should be confined to the witness's own entries, unless he knew the facts set down by the party, and read them over shortly after the transaction. Beddo *v.* Smith, 1 Ala. 397. And where a tradesman's clerk entered all the goods

Note on " Memorandum Evidence."

sold in a waste-book, from his own knowledge, which the tradesman copied day by day into the ledger, in presence of the clerk, who checked them as they were copied, the clerk was allowed to use the ledger as an original book; otherwise, the original or waste-book should be produced.

Great care is taken by courts to guard against forgery and interpolation in these memoranda. And the opposite counsel are entitled to see and cross-examine the witness in respect to them.

In Russell v. H. R. R. R. Co., 17 N. Y. 134, an action was brought for personal injuries on the ground of negligence upon the trial. A physician was examined as a witness on the part of the plaintiff, and the plaintiff's counsel offered in evidence a memorandum made by such witness, relating to the extent of the plaintiff's injuries. The witness stated that the memorandum was made at the time of its date, and at the time of the accident, and that, when it was made, he knew it to be true. And it was held that a memorandum made by a living witness contemporaneously with the facts to which it relates, is admissible in evidence only as auxiliary to, and not as a substitute for, his oral testimony.

In England, if the witness will take the responsibility of swearing positively, although he at the same time says that he has no present recollection whatever of the facts sworn to, but bases his testimony entirely upon the memorandum made by him at the time, the testmony is received as competent evidence, while the memorandum itself is excluded. In this state, a witness who says that, after refreshing his memory by a written memorandum, made by himself at or about the time of the occurrence, he cannot recollect the facts, but that he is confident that he knew the memorandum to be correct when it was made, is not required to swear to the facts in positive terms, but the memorandum itself is received in connection with, and as auxiliary to, the oral testimony. The American practice in this respect is decidedly preferable, as nothing whatever is added to the force of the evidence by the positive oath of the witness, after he has stated that he has no recollection of the facts aside from the memorandum.

It is, however, an indispensable preliminary to the introduction of such a memorandum in evidence, that it should appear that the witness is unable, with the aid of the memorandum, to speak from memory as to the facts. Russell v. H. R. R. R. Co., ante. It is only as auxiliary to, and not as a substitute for, the oral testimony of the witness, that the writing is admissible. It is the duty of the court, in all such cases, to see, before receiving the memorandum in evidence, that it was made at or near the time of the transaction to which it relates, that its accuracy is duly certified by the oath of the witness, and that there is a necessity for its introduction on account of the inability of the witness to recollect the facts. Id. In the case just cited, it appeared that the witness had a distinct recollection of all the facts, independent of the memorandum. And it was held that the memorandum was, for this reason, improperly admitted.

*Verified.*—In Gilchrist v. Brooklyn Grocers' Mfg. Assn., 59 N. Y. 495, an action was brought to recover the purchase price of a quantity of potatoes, alleged to have been purchased by plaintiff as agent for defendant, and

shipped to the latter by canal. Defendant claimed a deficiency in quantity, as shown by the weight of the boat and cargo, at a way-lock upon the canal, and called a witness who testified that, in his belief, the entry on the way-book was in his handwriting, and, if so, he weighed the boat, and it was weighed correctly. The witness then stated the weight from the entry. On cross-examination, it appeared that the witness had no connection with the way-lock, but occasionally weighed boats, that he could not swear the entry was in his handwriting and that he had no recollection of the matter, independent of the entry.

It is indispensable to entitle a memorandum to be read, that the witness should verify the handwriting as his own. This is the foundation of such evidence. In this case the witness was unable to state a single fact, which made the memorandum of any value as evidence.

The fact of making the memorandum should be proved with a degree of certainty, which leaves no room for doubt. Without this, such evidence is a mere shadow. It will not do to found an inference upon a mere guess. Id.

In Dooley *v.* Moan, 57 Hun, 535, it was held that books and their entries may be used as memoranda to refresh the recollection of witnesses who made or were cognizant of the entries at the time they were made and could swear that they knew them to be correct when made.

In Matter of Simpson, 53 Hun, 639, the entries in the books offered in evidence were stated to have been made by the witnesses, or by persons who were clerks under him. It did not appear by the authentication of the books that the entries had been correctly made in them, or that they were attested by any person who at the time knew that they truthfully recorded the transactions to which they related. The persons who were clerks under the witness, in whose handwriting the entries into the books had been made, were not called as witnesses, or their absence accounted for in such a manner as to allow their entries to be read. And it was held that the books of account and the entries in them were inadmissible.

In Rudd *v.* Robinson, 54 Hun, 339, an action was brought to charge the defendant as a trustee of a corporation. The corporation succeeded to the business of a firm which was found to have been indebted to the defendant in the amount of over $1,000, the payment of which was obtained by him from the corporation. The evidence of this fact was derived mainly from entries made in the books of the company. To the admission of these entries in evidence the defendant objected. The accounts as far as they included these items, were kept in the book by the witness, who made the entries from memoranda furnished him by one Fiske. The witness had no knowledge on the subject of the correctness of the entries. Fiske testified that the data he furnished to the witness to be entered in the books of the corporation, were truthful and correct entries of transactions made by him on behalf of the corporation. And it was held that entries, made in the course of business in this manner, have been held to be admissible evidence to prove the transactions recorded, when they afterwards become the subject of legal controversy, Mayor, etc., *v.* Second Ave. R. Co., 102

N. Y. 572; Cheever *v.* Lamar, 19 Hun, 130; and that the admissibility of the books proved in this manner, is not affected by anything contained in Peck *v.* Valentine, .94 N. Y. 569, for in the latter case the decision was confined wholly to objectionable evidence of a lost memorandum.

In Payne *v.* Hodge, 7 Hun, 612, the plaintiff testified that he made certain entries in accordance with statements made to him by other witnesses, and that such statements were true. And it was held that this was all that the law required, and the evidence was clearly sufficient to establish the correctness of the plaintiff's accounts. Such evidence is not necessarily upon hearsay, which was very properly condemned in Gould *v.* Conway, 54 Barb. 361. It can make no difference how the truth of the facts stated in the entry is proved, whether by the one who made the entry or by the one who gave him the facts which he entered. Nor is an entry incompetent because it is of a fact not within the personal knowledge of the person who made it. It is enough if it appears that the entry rests upon knowledge and not hearsay, and is proved to have been correctly made.

In Shear *v.* Van Dyke, 10 Hun, 528, an action was brought to recover damages for the breach of a contract in reference to gathering hay. The question in issue, upon the trial, was the number of loads of hay delivered at a particular time. The witness testified that he could not then remember the number, but that he knew it at the time and then told the plaintiff. The plaintiff was then called as a witness and was allowed, against objection, to state that the number of loads mentioned to him by the former witness was fourteen. And it was held that the evidence was admissible. The question was as to the declaration made to plaintiff, not as to its truth or falsity. In this view, it was not hearsay evidence. If the witness had given the plaintiff a memorandum of the loads at the time, and had sworn that the memorandum so furnished was correct, the plaintiff then might have produced and verified the memorandum by his own oath. It has been repeatedly held that, when a witness testifies that he made his memorandum correctly at the time the event occurred, but was unable to recollect the facts contained in it when examined in regard to the transaction, the memorandum may then be received in evidence of the fact therein stated. So in Payne *v.* Hodge, *ante,* the plaintiff testified that he made entries in accordance to a statement made to him by other witnesses, and the latter testified that such statements were true, and the evidence was held to be admissible.

In Lewis *v.* Ingersoll, 1 Keyes, 347, certain letters were produced and identified by the writer on his cross-examination. He had forgotten the facts therein stated, but was able to say in substance that the contents of the letters were undoubtedly true at the time they were written, although he was then unable to remember them. And it was held that, under such circumstances, the letters were admissible as auxiliary to the testimony of the witness, and as memoranda made by him of a then existing state of facts, within the cases of Halsey *v.* Sinsebaugh, *ante ;* Russel *v.* H. R. R. R. Co., *ante ;* Guy *v.* Mead, *ante.*

In West *v.* Van Tuyl, above reported herein, it was held that a book

made up by copying into it tallies of work kept upon planed shingles by the workmen in a mill, is properly admissible and entitled to such weight as the court may give it, where it is supported by.evidence that it was correctly kept, and was recognized by defendant in his settlement with the persons as correct.

It is quite immaterial whether memoranda are contained in books of account or on separate slips of paper. In either case, it is the statement of a fact in writing, or purports to be so; and the rules of evidence governing its admissibility are well defined. Gould *v.* Conway, 59 Barb. 355.

All the cases in our state, or nearly all, are cases where the witness who made the memorandum, knew, at the time he made it, that the matter therein stated was true. It has been repeatedly held, since the decision in Merrill *v.* I. & O. R. R. Co., *ante*, where the witness who made the memoranda was unable to recollect the facts contained in it at the trial, but was able to state that he knew the memorandum stated what was true when he made it, that the memorandum made might be received, in connection with the oral testimony of the witness, as evidence of the facts therein stated. But where the witness, who made the memorandum, had no knowledge of the facts, except what another told him, and the one who told him did not see the memorandum at the time it was made, and consequently cannot state that he knew it was truly made at the time, to hold that it is admissible in evidence is going a long stride beyond any adjudged case, and would be a most dangerous rule to adopt. If the salesman, who reported the sale should see the charge made by the book-keeper and then knew that it was correctly made, it might be introduced as a memorandum, in connection with the testimony of the salesman, either with or without the testimony of the book-keeper, in case the salesman has forgotten the fact that such sale had been made by him. It falls within the principle of allowing memoranda of facts once known, and committed to writing, but forgotten by one of the actors in the transaction, to be used in evidence to supplement, or in the place of, his memory. The question as to who made the memorandum is of much less importance than the question whether the person who saw it made, knew at the time, personally, that the fact existed and was there truly recorded. Of course, if the witness did not make the memorandum, in such case, it should be clearly and unmistakably identified by him as the identical one he saw made, or at least that he saw and understood it, when the fact of which he then had personal knowledge was clearly within his recollection.

In Krom *v.* Levy, 1 Hun, 171, a witness testified that he knew that the entries in a book were correct when made; that he saw most of them when made or very soon after, and that the book produced was the original ; and it was held that the entries in the book were properly admitted in evidence. When the witness testifies, of his own knowledge, as to the accuracy to the prices charged, and that work was done and material furnished between certain times, but that he cannot give the dates when each item was done or furnished without looking at the account book, it is proper to. read from the book the dates and amounts which cannot be otherwise

given. Id. The appeal in this case was dismissed by the court of appeals, 60 N. Y. 126.

In Mayor, etc., *v.* Second Ave. R. Co., 31 Hun, 341, the defendant neglected to repair the streets, when notified to do so by the street commissioner, and the necessary repairs were made by the city. The city afterward brought this action to recover the amount it had expended in so doing. Upon the trial, one Wilt, a foreman in the employ of the department of public works, testified that he had charge of the work ; that he called in the morning and afternoon of each day and marked in a book the names and the time of the men employed and the quantities of new materials used. Two other witnesses testified that they were the foremen of the gang employed in doing the work, and that when Wilt came around, they gave him the names of the men employed and the time they had worked, together with a statement of any new material used during his absence. And it was held that the entries made by Wilt were properly received in evidence. An appeal was taken from the judgment of the general term in this case, to the court of appeals, and the decision was affirmed and reported in 102 N. Y. 572.

In Avery *v.* Mattice, 56 Hun, 639, it was held that, where a witness is asked, on cross-examination, whether he made a memorandum of the transaction, but is not asked to produce it, this does not entitle him to read the memorandum on his re-direct examination.

In Vaughn *v.* Strong, 52 Hun, 610, it was held that, where, in an action to recover the proceeds°of a policy of insurance on the life of the plaintiff's father which defendant's testator had collected and received, it was sought to introduce in evidence entries in the private book and diary of said testator, upon proof merely that the entries were in his handwriting, the entries were inadmissible in favor of the defendant. The entries were not made in the presence of the parties interested in the fund, or under circumstances by which they might be regarded as a part of the *res gestæ* and the books contained only private memoranda in favor of the testator.

In Townsend Mfg. Co. *v.* Foster, 51 Barb. 346, it was held that, where a memorandum, made by a witness in his memorandum book, of what took place at an interview, was made on the evening of the day on which the interview occurred, and corroborates the evidence given by the witness on the trial, it may be received and relied upon for that purpose.

In Mayor, etc., of N. Y. *v.* Second Ave. R. Co., *ante*, it was held that, where an account has been kept in the ordinary course of business, of laborers employed in the prosecution of work, based upon daily reports of foremen who had charge of the men, and who, in accordance with their duty, reported the time to another subordinate of the same common master, but of a higher grade, who, also in accordance with his duty, entered the time as reported, entries so made, with the evidence of the foremen that they made true reports, and of the person who made the entries that he correctly entered them, are admissible as evidence of the amount of work done.

A material ultimate fact may be proved by the evidence of a witness who knew the fact and can recall it, or who having no personal recollec-

tion of the fact at the time of the examination as a witness, testifies that he made, or saw made, an entry of the fact at the time or recently thereafter, which, on being produced, he can verify as the entry he made or saw, and that he knew the entry to be true when made. Such entries are admitted in connection with, and as auxiliary to, the oral evidence of the witness, and this whether the witness, on seeing the entries, recalls the facts, or can only verify the entries as a true record made or seen by him at, or soon after, the transaction to which it relates. Halsey v. Sinsebaugh, ante ; Guy v. Mead, ante.

So such material and ultimate facts may be proved by showing by a witness that he knew the facts in relation to the matter which is the subject of investigation, and communicated them to another at the time, but had forgotten them and supplementing this testimony by that of the person receiving the communication to the effect that he entered, at the time, the facts communicated, and by the production of the book or memorandum in which the entries were made. The admissibility of such entries was apparently approved in Payne v. Hodge, 71 N. Y. 598. The rule as to the admissibility of memoranda may properly be extended so as to embrace the case of an account kept in the ordinary course of business, of laborers employed in the prosecution of work, under the circumstances stated in Mayor, etc., of N. Y. v. Second Ave. R. Co., ante. Entries so made, with the evidence of the foremen that they made true reports, and of the person who made the entries that he correctly entered them are admissible.

In a business where many laborers are employed, the accounts must in most cases, of necessity, be kept by a person not personally cognizant of the facts, and from reports made by others. The person in charge of the laborers knows the facts, but he may not have the skill, or, for other reasons, it may be inconvenient for him to keep the account. In admitting an account so verified, there is little danger of mistake, and the admission of such an account as legal evidence is often necessary to prevent a failure of justice. But it is a proper qualification of the rule admitting such evidence, that the account must have been made in the ordinary course of business, and that it should not be extended so as to admit a mere private memorandum, not made in pursuance of any duty owing by the person making it, or when made upon information derived from another who made the communication casually and voluntarily, and not under the sanction of duty or other obligation.

In Peck v. Valentine, ante, the memorandum there admitted was not an original memorandum, but a copy of a private memorandum made by an employee of the plaintiff for his own purposes, and not in the course of his duty, or in the ordinary course of business. The original memorandum was delivered by the one who made it, to the plaintiff, who lost it, but testified that the paper produced and received in the evidence was a copy. The person who made the original memorandum was unable to verify the copy. The court held that the copy was improperly admitted in the evidence, and its decision rests on quite different facts from those in the case of Mayor, etc., of N. Y. v. Second Ave. R. Co., ante.

Note on "Memorandum Evidence."

In Irving v. Claggett, 56 Hun, 642, reported above, an action was brought for services rendered by plaintiff and his employees as detectives. Plaintiff offered in evidence a book in which entries had been made by himself of the time during which his employees were engaged in the work. The entries were first made in another book, which was lost, from slips and reports returned by the detectives, which were also lost. The only evidence to prove the truth of the entries was the testimony of plaintiff and another witness that at different times they had observed the detectives in the apparent discharge of their duties. And it was held that this evidence fell far short of what is required to authenticate charges made in this manner so as to render them admissible against the party or parties to be affected by them. In order to make this book or the charges contained in it evidence, it was necessary to introduce proof from the detectives themselves, or otherwise, that they truthfully reported to the plaintiff the time devoted by themselves to this employment; and after that proof has been made, the further evidence of the plaintiff should have been given that the charges were accurately entered in the books. The legal rule upon the subject was very fully examined in Mayor, etc., v. Second Ave. R. R. Co., ante.

In this case, the performance of the services charged in the books were shown to have been rendered and reported accurately before making the charges, and to have been correctly entered in the books which were received. And this is the least, in a case of this description upon which the law will permit the entries in a book to be read in evidence. Gould v. Conway, ante ; Ives v. Waters, 30 Hun, 297; Mayor, etc., v. Second Ave. R. Co., 31 Id. 241.

An exception exists in favor of a party keeping his own books, where upon proof by persons with whom he has settled, by the books, that he keeps true and honest accounts, and that some of the articles have been delivered, the books may be read. McGoldrick v. Traphagen, 88 N. Y. 334.

*Inability to recollect.*—In the case of Merrill v. Ithaca & O. R. R. Co., ante, the court came to the conclusion that original entries read by a witness, and which he should testify were correctly made, might be read in evidence, though he remembered nothing of the facts represented by them; but that to render such entries admissible, it should appear that every source of primary evidence had been exhausted. Since then it has uniformly been held admissible for the witness to refer to the original entries in respect to the facts which he is called upon to testify, and if he verifies their correctness, and is unable to recollect such facts, independently of such entries, they may be read in evidence. Id.; Bank of Monroe v. Culver, ante ; Cole v. Jessup, 10 N. Y. 96; Halsey v. Sinsebaugh, ante ; Russell v. Hudson R. R. R. Co., ante ; Guy v. Mead, ante ; Squires v. Abbott, 61 Id. 530 ; Howard v. McDonough, 77 Id. 592 ; Peck v. Ballentine, ante ; Mayor v. Second Ave. R. R. Co., ante ; Brown v. Jones, 46 Barb. 400 ; Meecham v. Pell, 51 Id. 65 ; Kennedy v. O. & S. R. R. Co., 67 Id. 170.

Though in Guy v. Mead, ante, the court did not expressly declare that the admissibility of the evidence was dependent upon the want of recol-

lection of the witness, the fact existed which rendered the paper competent evidence within the rule as above stated ; and reference was with apparent approval, made to Russell v. H. R. R. R. Co., *ante*, where the judgment of the court below was reversed for error in receiving a memorandum in evidence when, for aught that appeared, the witness had recollection of the facts to which he was called upon to testify, independently of it. And the cases above cited, decided subsequently to Guy v. Mead, *ante*, state and adhere to the doctrine that original entries made by a witness are admissible as auxilliary to his evidence, only when he is unable to distinctly recollect the facts without the aid of it. The rule which renders such entries admissible rests upon the principle of necessity for the reception of secondary evidence, and is not applicable where the witness has a distinct recollection of the essential facts to which they relate. The primary common law proof is then furnished, and the necessity for evidence of the lesser degree does not arise. And this right, so qualified, to introduce such secondary evidence, is the better rule, in view of the opportunity which otherwise might exist, to superadd a written memorandum to the evidence of a witness, which might not sometimes be properly made available to strengthen his testimony with the court or jury. This reason for the rule so limited has also been in the minds of the courts in deciding the cases declaring it. Meecham v. Pell, *ante ;* Driggs v. Smith, 4 J. & S. 283; Russell v. H. R. R. R. Co., *ante.*

Entries made by a witness are not, therefore, admissible, unless it appears that he does not recollect the occurence to which they relate, independently of them ; but when the evidence of the witness fairly indicates that his recollection of the facts in issue is distinct, to which his memoranda refer, the ruling which permits the entries to be read in evidence is erroneous, unless they are admissible as part of *res gestæ.*

In Barrelle v. Penn. R. Co., 51 Hun, 640, an action was brought to recover damages for an injury alleged to have been sustained by the plaintiff while a passenger upon one of the defendant's cars. Upon the trial the plaintiff offered in evidence memoranda which he made of directions given to him by his physician. They did not relate to, nor constitute, a prescription. There was no evidence that the plaintiff needed the memoranda to refresh his recollection, or that he had not refreshed his recollection. And it was held that such memoranda, though made at the time, were inadmissible in evidence.

In Squires v. Abbott, *ante,* an action was brought on a bond given to the plaintiff by the defendant to obtain the discharge of a vessel seized by virtue of a warrant of attachment issued pursuant to the provisions of chapter 482, Laws of 1862. A lien upon a vessel under this statute ceases when the vessel has left the port, unless the person claiming the lien files specifications thereof, within twelve days after such departure. The plaintiff, in testifying as to the time when the vessel returned, wished to refer to memoranda made by himself on the morning of his examination, which he said would refresh his memory. He did not claim that he could not speak with sufficient certainty without reference thereto. His testimony showed the

he had sufficient recollection of the time of such return to testify in relation to it. The memoranda were excluded and it was held that the exclusion was proper, as the circumstances stated in relation to the occasion of making the memoranda, did not bring the question within the rule as declared either in Guy v. Mead, *ante*, or Marclay v. Shults, 29 Id. 346.

In Brown v. Jones, *ante*, the question in dispute was whether the sum of $35 was paid by plaintiff for the use of land up to April, 1863, and was received by defendant for that purpose, or to apply on the contract between a third party and defendant. The defendant testified positively that he told the plaintiff that he would receive the money for the use of the land, and that he made an entry in his cash book to that affect. He appeared to have a distinct recollection of the facts, independent of the memorandum. And it was held that evidence of the entry in the cash book was properly excluded. If the defendant had had no distinct recollection of the payment or receipt of the money, and had sought to read the entry in said cash book to prove such receipt or payment, the entry would have been clearly admissible, within the cases of Guy v. Mead, *ante*, or Halsey v. Sinsebaugh, *ante*.

Formerly the rule, in this state, was that entries in books of account, diaries or other written memoranda, might be referred to, in order to refresh the recollection of the witness, and not otherwise, and that the witness must then state what his recollection, thus refreshed, was upon the subject of inquiry. This rule operated, many times, to exclude testimony, on account of an entire failure of the witness to recollect anything on the subject further than that he made the entry or memorandum at the time of the transaction, and that it was then true. In such cases, the memorandum itself may now be read in proof of the fact in dispute as independent testimony. But it is an indisputable preliminary to the introduction of such memorandum in evidence that the witness is unable, with the aid of the memorandum, to speak from memory as to the facts. Where the witness has a distinct recollection of all the facts, independent of the memorandum, the latter is improperly admitted in evidence.

It is indispensable to the admission in evidence of a memorandum made by a witness at the time of the making of an alleged agreement, that it is shown that the witness has no recollection of the matters stated therein, independent of the written paper. Meacham v. Pell, *ante*. If he has such recollection, the evidence is inadmissible. Where a witness testifies fully to an interview between the parties, at which an agreement was made, the memorandum of the terms of such agreement, made by him at the time, is not admissible to corroborate his testimony. A party to an action should not be permitted to give in evidence a memorandum made by himself, to prove the terms of a contract, where the memorandum has been made by him privately, and never shown to the other party.

A memorandum is not received in evidence to corroborate a witness who does not recollect the facts, independent of it, but to recall the facts if he has forgotten them. Where the witness may resort to it to refresh his recollection, it was held in Kennedy v. O. & S. R. R. Co., *ante*, that it may

be read in evidence. But unless it became necessary for this purpose, it was wholly incompetent. Id. In this case, the defendant proved that one of his agents drew up a writing setting out the terms of an agreement for the sale and purchase of wood ; that he presented it to the plaintiff's agent who made the contract who said it was correct, but he wished the plaintiff's name in it instead of his own. It was never signed by either party. And it was held that the paper was not evidence to show the terms of the contract.

In Collins *v.* Rockwood, 64 How. 57, it was held that it is an indispensable preliminary to the introduction of a memorandum in evidence, that it should appear that the witness is unable, without its aid, to speak from memory as to the facts. The writing is admissible only as auxiliary to, and not as a substitute for, the oral testimony of the witness. It was also held in this case, that it is the duty of the court in all such cases, to see, before receiving a memorandum in evidence, that it was made at or about the time of the transaction to which it relates ; that its accuracy is duly certified by the oath of the witness, and that there is necessity for its introduction on account of the inability of the witness to recollect the facts.

In Hurd *v.* Birch, 46 Hun, 679, an action of replevin was brought to recover from the assignee lumber sold to the assignor by the plaintiffs on the ground of false and fraudulent statements as to her responsibility. One of the plaintiffs to whom the statements were alleged to have been made testified to them positively from his own recollection. A memorandum which he testified was made by him at the time, was then offered in evidence. This memorandum contained the items of the goods ordered, and also the statement of the fraudulent respresentations. It was admitted in evidence against the objections and exceptions of the defendant. It was held that this written statement was not sworn evidence ; and that merely as a writing proved to have been made at the time, it was not admissible. Nor could it be made admissible, by the testimony of the witness that it was a true statement. He had already from his own recollection, testified positively to the conversation ; and to give such a writing in evidence was only showing that the witness had on a former occasion written down without oath the statements which he had now given upon oath. In other words, it was an attempt to strengthen the credibility of the witness by showing that he had said, or rather written, the same things previously.

The witness may refresh his recollection by referring to a memorandum. And this he may do, though, without the memorandum, his recollection would be very faint. This is very different from giving a memorandum of a conversation in evidence as a distinct piece of proof. If there are cases in which such a written memorandum can be given in evidence, they must be only when the recollection of the witness has altogether failed, and he is unable to testify to the matters in question. Id.

Such a memorandum does not resemble entries made in the ordinary course of business. The latter entries, when admitted in evidence, relate to business transactions, and are the records of such transactions into merchants' books, and are such records of business as are customarily

made. But a memorandum of statements as to responsibility is not such an entry as is here mentioned ; and the case does not come within the principle which admits such entries.

There is no distinction between entries which are required to be made officially or in the course of business, and those which are made voluntarily outside of the routine of a business of the party making them. Morrow *v.* Ostrander, 13 Hun, 219. Formerly, in this state, the rule admitting entries was restricted to those made by a person in the course of his business duties. Bank of Monroe *v.* Culver, *ante ;* Merrill *v.* I. & O. R. R. Co., *ante.* But that restriction no longer exists. Now a memorandum made at or about the time when the event or transaction mentioned in it took place, and where the author swears that he knows it to have been correct when made, may be read to the jury in connection with the oral testimony of the witness who has no recollection of the transaction independent of the paper. Halsey *v.* Sinsebaugh, *ante ;* Guy *v.* Mead, *ante ;* Morrow *v.* Ostrander, *ante.*

In the case last cited, an action was brought to recover by a teacher for the breach of the contract made with her by the defendant's predecessor. The principal issue of fact was as to the genuineness of the signature of the school commissioner to a certificate that she was qualified to teach. Upon the trial the commissioner was called as a witness and testified that to the best of his knowledge and belief, he did not sign or issue the certificate, and that he kept a book, in which he entered the certificates issued by him during the month in which the certificate in question bore date. The defendant's counsel produced this book and offered it in evidence to show that it contained no entry of the certificate in question. The book was excluded upon plaintiff's objection, and it was held that its exclusion was error. The witness had some recollection of what occurred at the time, when the certificate was alleged to have been given, though he was not able to speak positively on the point, but so far as it went, being in accordance with the memorandum, the latter was admissible as independent, corroborating testimony. To exclude it, if it was honestly and correctly made, would be to reject a very satisfactory mode of arriving at the truth. Id.

At an early day, the rule was that such a memorandum as is above described, might be used to refresh the recollection of the witness, but could have no force as evidence, unless the witness, after referring to the memorandum, had a recollection of the facts to which the memorandum related. But that rule was abrogated by later decisions, which held that in such a case a memorandum might be read as evidence of the facts contained in it, where the witness may have totally forgotten such facts at the time of the trial. And a partial failure of the recollection of the witness was held in this case not to constitute a reason for excluding the memorandum. The present case differs from those above cited, in that the evidence furnished by the memorandum is of a negative character, while in the cases cited the memorandum contained positive affirmations as to the fact in dispute. But, if the entries are accurately and promptly made, the absence of an entry on a particular day is some evidence that no certificate was

granted on that day, and to that evidence, though perhaps slight, the defendant is entitled.

In Harvey *v*. Cherry, 76 N. Y. 436, a memorandum was prepared by the defendant, which had never been submitted to the plaintiff or produced in his presence, and the various items contained in it had all been testified to by him as though possessing a distinct recollection of all the facts. And it was held that there was no necessity for the introduction of the memorandum, and that it was properly excluded.

In Philbin *v*. Patrick, 6 Abb. N. S. 284, a witness testified that the entries were made by him when the articles were delivered to the carmen in the course of his business as bookkeeper of the plaintiffs; that he did not recollect the delivery of the articles, and was only able to state what articles actually were delivered, from having made the charges in the scrap-book; that they were made at or about the time of the transactions to which they related, and that they were correct when made, and that he was unable, with the aid of the memoranda made by him, to speak from memory as to the facts. And it was held that the scrap-book was properly received in evidence under the rule laid down in Halsey *v*. Sinsebaugh, *ante* ; Russell *v*. H. R. R. R. Co., *ante* ; Guy *v*. Mead, *ante* ; Marclay *v*. Shultz, *ante* ; Hyndes *v*. Schultz, 39 Barb. 600.

In Nelson *v*. Mayor, etc., of N. Y., 53 Hun, 630, an action was brought to recover upon a contract made with the defendant for vitified, salt-glazed stoneware drain and sewer pipes and inverted blocks. The right of the plaintiff to recover was contested upon the ground among others that the contract was not let to the lowest bidder, but that plaintiff's bid for the materials exceeded that of one McMann in the sum of more than $70,000. To prove this fact, it was shown by the evidence of Wamsley and Cunningham that they were in the employment of the plaintiff during the time included in the estimate, and that it was their duty to keep an account of the articles which were sent from the plaintiff's place of business to the defendant, under and pursuant to the agreement. For this purpose, books of account were kept in which they made entries of these articles. The entries were chiefly made by Cunningham, and only by Wamsley in the absence of the former. The books, in which these entries were made were produced, and they were testified to have been kept in this manner, and to have included all the articles delivered by the plaintiff to the defendant prior to a certain date. The witnesses were incapable of recollecting the articles or quantities which had been delivered. The books were kept to record truthfully other detailed transactions in plaintiff's business. And it was held that, when books of account, or memoranda concerning transactions which have been forgotten, but which can be sustained as having been truthfully made, are offered in evidence, the settled rule is to require the courts to receive them, and they are to be submitted to the jury for their consideration, so far as they may be applicable to the subject in controversy. Krom *v*. Levy, 1 Hun, 171; Ocean Nat. Bank *v*. Carl, 55 N. Y. 440; McGoldrick *v*. Traphagan, *ante*.

In Drigg *v*. Smith, 45 How. 447, it was held that, where a witness on

Note on "Memorandum Evidence."

the trial testified clearly and distinctly to certain material facts, a written memorandum of such facts, made by him at or about the time they transpired, cannot be properly received in evidence to assist the recollection of the witness; but that it is otherwise where the witness is unable from memory alone to testify to such facts. The written memorandum may then be allowed as an auxiliary or aid to the witness.

The doctrine of the courts of this state originally was that such a paper could not be given in evidence as an independent piece of testimony. It might be referred to by a witness to refresh his memory, but he must then swear to the truth of the fact, or his statement would not be evidence. Id.; Guy *v.* Mead, *ante.* It was subsequently held that original entries might be read in evidence, though the witness had forgotten the facts attested by him ; but the rule at first was restricted to entries made by witness in the course of his business. The rule was still further relaxed in Halsey *v.* Sinsebaugh, *ante,* and the principle was adopted without reservation and laid down as, the law of this state, as first stated in Cowen and Hill's Notes to Phillips' Evidence (note 528), "that an original memorandum, made by the witness presently after the facts noted in it transspired, and proved by the same witness at the trial, may be read by him, and is evidence to the jury of the facts contained in the memorandum, although the witness may have totally forgotten such facts at the time of the trial." A further condition was laid down in Russell *v.* H. R. R. R. Co., *ante,* that "it is an indispensable preliminary to the introduction of such a memorandum in evidence that it should appear that the witness is unable, without the aid of the memorandum, to speak from memory as to the facts." In this latter case, the witness had a distinct recollection of all the facts independently of the memorandum, and the latter was held to have been improperly admitted, and the judgment was, for that reason, reversed and a new trial ordered.

As thus settled, the rule is still in force. Driggs *v.* Smith, *ante ;* Brown *v.* Jones, *ante ;* Meacham *v.* Pell, *ante.* None of the authorities has worked a change in it. In Guy *v.* Mead, *ante,* in which the judgment was reversed on account of the exclusion of the memorandum, the witness had testified that he had no recollection independently of the writing. In Philbin *v.* Patrick, 6 Abb. N. S. 284 and in Lewis *v.* Ingersoll, 1 Keyes, 347, the admission of the memoranda was sustained, because the proper foundation had been laid. In Marclay *v.* Shults, *ante,* and in Downs *v.* N. Y. C. R. R. Co., 47 Id. 83, the memorandum was rejected, on account of its not being the original. In the case of The Townsend Mfg. Co. *v.* Foster, 51 Barb. 346, the point, that a foundation for the introduction of the memorandum must be laid, was not raised at all.

In Guy *v.* Mead, *ante,* an action was brought on a promissory note made by the defendant payable to one Scharts or bearer. The defense set up was payment to Sharts, while he was the holder, and the statute of limitations. There were two indorsements of payment on the back of the note, when it was produced at the trial, the latter one of $40, Feb. 26, 1840. If this one was correctly made, it was an answer to the defense of the statute of limi-

tations. A witness testified in substance that, while the note was in the hands of Sharts, he, at Sharts' request, made a calculation in writing, of the interest then due upon it, making a proper allowance for the payments indorsed upon it; that he fully believed that the statement was accurate, but that aside from the written paper itself, he had no recollection as to the time when it was made. The statement purported to have been made April 1, 1848. And it was held to be competent.

*Original.*—It is competent to read an entry, made by a witness, of any fact material to the issue, if made at or near the time when the fact occurred, and he can swear that it was made correctly, Guy *v.* Mead, *ante ;* or he may use an entry made by himself or by any other person, or a copy of an entry, if, on reading it, he can testify that he then recollects the fact to which the entry relates. Marclay *v.* Shults, *ante.* In this case, a witness testified that he had measured the flush boards on a dam in 1852 or 1853, and made a memorandum of the width on a piece of paper, and had a correct copy of it then in court; that he first made a memorandum on paper, then marked it on the shop or wash house, and made the copy then in its possession from the marks made on the building. The witness had previously testified to the width of the flush boards, from the memorandum, without objection. But the plaintiff's counsel asked the witness to look at the paper, and state the width of the flush boards. And it was held that it was incompetent for the witness to read the memorandum. It was not an original entry, and hence not evidence of its own contents; and it was not used or offered to be used to refresh the witness's recollection.

A copy of an entry made by a witness or by any other person, may be used by him to refresh his recollection, Marclay *v.* Shults, *ante*, and the original memorandum may be read in evidence, if made at or near the time, when the material fact to which it relates occurred, and the witness producing it can swear that it was made correctly, though he cannot then recollect the facts contained in it. Halsey *v.* Sinsebaugh, *ante.* But a copy of a memorandum cannot be read as evidence of its contents. ˙ Marclay *v.* Shults, *ante ;* McCormick *v.* Penn. C. R. R. Co., *ante.* In the last cited case, the memoranda first made by the plaintiff and those helping him were destroyed, and the papers exhibited to the witnesses upon the trial were prepared from them, but it did not appear that they were literal copies. In preparing lists of articles in the different lost trunks, the memory of those engaged was set at work, and, as articles were brought to recollection from the bills of the purchase of them and otherwise, they were set down upon different pieces of paper. When this process was completed, the contents of these papers were transcribed in gross. These were the completed and corrected memoranda, and it was as to these that the plaintiff's wife testified that she knew all the articles named in them were in the trunks. And it was held that the memoranda were competent; they could not be read to the jury as evidence of themselves of what were the contents of the lost trunks, but only as a statement on paper in detail of what the witness had testified were the articles contained in the trunks.

Note on " Memorandum Evidence."

In Dorsey *v.* Pike, 57 Hun, 586, it was held that, for the purpose of refreshing the witness's recollection, it is entirely immaterial whether the entries looked at are originals, copies, or whether made by himself or by a stranger.    Marclay *v.* Shults, *ante.*

In Peck *v.* Valentine, *ante,* the plaintiff, for the purpose of proving that the defendant had not entered in the cash book all the moneys received by him from sales of lumber, called one Leggett as a witness, who testified that he was employed by the plaintiff in his lumber yard, and kept on a loose piece of paper an account of moneys received by the defendant from sales of lumber; that the entries were made each day continuously, except Sunday, and were correct; that he gave the paper to the plaintiff, and that the defendant never saw it.    The plaintiff testified that he received the memorandum from Leggett and had lost it, but that he copied the figures correctly into a memorandum-book, which he produced, and that the entries had not been altered.    The entries in the memorandum-book were then offered and received in evidence under the defendant's objection. And it was held that the entries were not competent evidence.

The original memorandum, if it had been produced, could have been used by Leggett to refresh his recollection; or, if he had forgotten the facts stated, and could not, on seeing the memorandum, recall them, yet, if he had been able to state that it was a true statement of the transaction, known to him at the time, it could have been read in evidence in connection with, and as auxiliary to, his testimony.    Id.; Guy *v.* Mead, *ante.* But the adverse party, on production by the witness of the memorandum, would have had the right of inspection and cross-examination.    Peck *v.* Valentine, *ante;* Merrill *v.* I. & O. R. R. Co., *ante.*    In the former case, the memorandum was not produced, and Leggett was not sworn as to its contents, for the reason, doubtless, that he could not remember what it contained.    The only evidence to connect the entries in the plaintiff's book with the original memorandum, was the oath of the plaintiff that the entries were a true transcript from the memorandum in connection with the testimony of Leggett, that the memorandum was a true statement of the transactions at the time; but the original memorandum was a mere declaration of Leggett in writing of certain facts observed by him.    The case is not distinguishable in principle from what it would have been, if there had been no memorandum and the plaintiff had been permitted to prove the oral representations of Leggett to him of the same facts.    This would be mere hearsay, and the fact that the statement, instead of being oral, was written, does not alter the character of the evidence.    In Clute *v.* Small, 17 Wend. 238, the plaintiff sought to prove an admission of the defendant, made to the sheriff at the time of the service of the writ.    To do this he was permitted to prove the contents of a letter written by the sheriff to the plaintiff's attorneys on returning the process, in which he reported the admission made by the defendant.    The letter was lost, and the sheriff testified that he could not recollect its contents, or what the defendant had said, but that what he wrote was undoubtedly as stated by

the defendant. And it was held that the letter of the sheriff was not admissible.

In Peck *v.* Valentine, *ante*, the original memorandum was not a writing, the contents of which, if lost, could be proved by secondary evidence. The rule, upon that subject, relates to writings which are, in their nature, original evidence, and in case of loss, their contents are from necessity allowed to be proved by parol. To extend the rule so as to admit a copy of a memorandum not in its nature original evidence of the facts recorded, and not verified by the party who made the original and knew the facts, is not justified by any rule heretofore established.

In Adams *v.* People, 3 Hun, 654, plaintiff was tried and convicted of an assault with intent to kill. In the trial, a police surgeon testified that, when the complainant was brought to the station house, he made a statement to him as to the persons who had assaulted him ; that the statement was written down by him upon a slate; that he thought names were mentioned, but could not remember what they were. A sergeant was called, who testified that he copied from the slate into the blotter of the station house the statement written upon it by the surgeon, and then rubbed out what was on the slate ; that the surgeon gave him the slate, but he did not see the surgeon write it. And it was held that the statement contained in the blotter was properly received in evidence, as the original memorandum had been erased from the slate and destroyed. The blotter was not introduced as proof of what was on the slate. It was only identified by the witness as containing what he copied ; but the statements written on the slate, and. which the surgeon swore he correctly made, was proved by the testimony of the sergeant, and not by the blotter.

In Downs *v.* N. Y. C. R. R. Co., *ante*, an action was brought for an injury to the plaintiff which a passenger on the defendant's road alleged to have been caused by the defendant's negligence. Defendant's counsel offered in evidence a newspaper account of the transaction, prepared from accounts received on the day and at the place of the accident, for the purpose of contradicting the plaintiff. The author was examined as a witness, and testified that he talked with plaintiff and others about it, and supposed he learned from them, but had no distinct recollection of what was said and could not tell from whom, principally, he received his information. And it was held that the printed article was properly excluded. It was not the original memorandum made by the witness. He did not, nor could he, testify that the article, or the copy from which it was printed, was a correct memorandum or reproduction of the statement of the plaintiff. It was but a summary of the facts collected by the writer from all sources, or rather of his understanding of the facts. It was not, therefore, within the principle of any of the decided cases. In all the cases, the original memoranda have been produced, and the persons by whom they were made have vouched for their correctness. Guy *v.* Mead, *ante ;* Halsey *v.* Sinsebaugh, *ante ;* Russell *v.* H. R. R. R. Co., *ante*.

*When.*—All the cases hold that the memorandum, in order to be admis-

sible in evidence, must have been made at or near the time of the transaction.

In Judd & Co. v. Cushing, 50 Hun, 181, an action was brought by the plaintiff who occupied a portion of the building owned by the defendant, as his tenant, to recover damages occasioned by the negligence of defendant's agents which caused the building to fall and take fire. Upon the trial of the action, the referee admitted, against the plaintiff's objection and exception, a paper entitled " Partial History of Transactions with S. M. & A. Houghton." The defendant had previously testified that, to the best of his knowledge and belief, every transaction in dollars and cents, as between himself and Mr. S. M. Houghton, whose wife owned the property in question, which was managed by him, was entered in a book, and that he had made a written statement in regard to those transactions with the Houghtons, which was to form a part of that account and which he placed with it. And it was held that it was clearly error to admit this evidence. This was a mere memorandum made by the defendant, at some time, it may be, after the suit was brought, setting forth his view as to the transactions between Houghton and himself, and was a mere *ex parte* statement forming no part of any account or agreement.

If such a memorandum is admissible, then in any case any memorandum made by a party in his own favor, at any time, must be competent evidence. Even though it may be claimed that the memorandum was what might be deduced from the accounts, it cannot be put in evidence even for that purpose. It was not communicated to anybody, was always in the defendant's own control, to be disclosed or not as his interest might require, and would be no more entitled to admission in evidence than would the mental resolutions of the witness which had never found expression even in words.

*Numerous entries or items.*—In Howard v. McDonough, *ante*, an action was brought to recover for the alleged unlawful taking of the materials and pictures of a job printing office. Upon the trial, a witness for plaintiff testified that, shortly after the seizure, he made a list or a schedule of the articles which he knew to have been taken and of their values, which he testified he knew. The articles were very numerous. The witness was then allowed, under objection and exception, to use the list in testifying to the articles and their value, and, after he had gone through the list, it was offered and received in evidence under objection and exception. And it was held that it was properly admitted.

The law as to the use of memoranda by witnesses while testifying is quite well settled in this state. (1). A witness may, for the purpose of refreshing his memory, use any memorandum, whether made by himself or another, written or printed; and, when his memory has thus been refreshed, he must testify to the facts of his own knowledge, but the memorandum itself is not evidence. (2.) When a witness has so far forgotten the facts that he cannot recall them, even after looking at a memorandum of them, and he testifies that he once knew them and made a memorandum of them at the time or soon after they transpired, which he intended to make cor-

rectly, and which he believed to be correct, such memorandum, in his own handwriting, may be received as evidence of the facts therein contained, although the witness has no present recollection of them. (3.) Memoranda may be used in other cases which do not precisely come under either of the foregoing heads. For instance : a store of goods is wrongfully seized, and an action is brought to recover for the conversion; there are thousands of items, and no witness can carry in his mind all the items and the values to be attached to them; in such a case, a witness may make a list of all the items and their values, and he may aid, by such lists, his memory while testifying. But he must be able to state that all the articles named in the list were seized, and that they were of the values therein stated; and he may then use the list to enable him to state the items. After the witness has testified, the memorandum which he has used may be put in evidence not as proving anything of itself, but as a detailed statement of the items testified to by the witness. The manner in which the memorandum, in such a case, may be used, is very much in the discretion of the trial court. He may require the witness to testify to each item separately, and have his evidence recorded in the minutes of the trial; in such case the introduction of a memorandum will not be important; or, it may allow the witness to testify quite generally to the items and their value, and receive the memorandum as the detailed result of his examination, leaving to the adverse party a more minute cross-examination. Without the use of a memorandum in such cases, it would be difficult, if not impossible, to conduct a trial, involving the examination of a large number of items. Id.; Driggs *v.* Smith, 36 Super. 283; McCormick *v.* Penn. C. R. R. Co., 49 N. Y. 304.

In Woodman *v.* Penfield, 53 Hun, 638, an action was brought for the conversion of a quantity of cigars to which the plaintiff claimed title. The defendant sought to justify such sale on the ground that the property in question was transferred by plaintiff's husband to her with intent to defraud his creditors, and that such transfer was therefore void as to them. A witness was allowed to testify that an inventory made by him, when the transfer of property took place, was correct, and such inventory was admitted in evidence. And it was held that its admission was not error, and the cases of Howard *v.* McDonough, *ante,* and McCormick *v.* Penn., C. R. R. Co., *ante,* were cited to sustain the ruling.